UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In Re:<br>NATIONAL CONSUMER MORTGAGE, LLC<br>　　　　　　　　　　　　Debtor.<br>JOHN P. BRINCKO,<br>　　　　　　　　　　　　Plaintiff,<br>vs.<br>RIO PROPERTIES, INC.,<br>　　　　　　　　　　　　Defendant. | Case No.2:10-cv-00930-PMP-PAL<br><br>**ORDER**<br><br>(Motion for Sanctions - Dkt. #29)<br>(Motion to Strike - Dkt. #82)<br>(Motion to Strike - Dkt. #84)<br>(Motion to Strike - Dkt. #85)<br>(Motion to Strike - Dkt. #87) |

　　　　Before the court is Defendant Rio Properties, Inc.'s Motion for Sanctions Due to Spoliation of Evidence (Dkt. #29). The court has considered the Motion, and the following related moving and responsive papers:

- Trustee's Memorandum of Points and Authorities in Opposition to Defendant's Motion Seeking Spoliation Sanctions (Dkt. #46);
- Declaration of Russell Bogard in Opposition to Defendant's Motion Seeking Spoliation Sanctions (Dkt. #47);
- Declaration of John Brincko in Opposition to Defendant's Motion for Spoliation Sanctions (Dkt. #48);
- Declaration of Conrad Nilo in Opposition to Defendant's Motion for Spoliation Sanctions (Dkt. #49);
- Declaration of Lorraine Loder in Opposition to Defendant's Motion for Spoliation Sanctions (Dkt. #51);

- Plaintiff's Appendix of Unpublished Opinions and/or Reported Decisions in Opposition to Defendant's Motion Seeking Spoliation Sanctions (Dkt. #52);
- Rio's Motion to Strike and Evidentiary Objections to the Declaration of Thora Thoroddsen Offered in Support of the Trustee's Opposition to Rio's Motion for Spoliation Sanctions (Dkt. #82);
- Rio's Evidentiary Objections to the Declaration of Russell Bogard Offered in Support of the Trustee's Opposition to Rio's Motion for Spoliation Sanctions (Dkt. #83);
- Rio's Motion to Strike and Evidentiary Objections to the Declaration of Conrad Nilo Offered in Support of the Trustee's Opposition to Rio's Motion for Spoliation Sanctions (Dkt. #84);
- Rio's Motion to Strike and Evidentiary Objections to the Declaration of Lorraine Loder Offered in Support of the Trustee's Opposition to Rio's Motion for Spoliation Sanctions (Dkt. #85);
- Rio's Motion to Strike, and Evidentiary Objections to the Declaration of John Brincko Offered in Support of the Trustee's Opposition to Rio's Motion for Spoliation Sanctions (Dkt. #87);
- Rio's Reply to Opposition to Defendant's Motion for Spoliation Sanctions (Dkt. #88);
- Declaration of Genevieve Weiner in Support of Rio's Reply to Opposition for Defendant's Motion for Spoliation Sanctions (Dkt. #89);
- Appendix of Unpublished Decision in Opposition to Rio's Reply to Opposition to Defendant's Motion for Spoliation Sanctions (Dkt. #90);
- Supplemental Appendix of Unpublished Decisions in Support of Rio's Reply to Opposition to Defendant's Motion for Spoliation Sanctions (Dkt. #91);
- Trustee's Opposition to the Rio's Six Motions to Strike Evidence Filed by the Rio on Reply in Support of its Motions for Spoliation Sanctions and to Transfer Venue (Dkt. #108)
- Rio Properties Inc.'s Consolidated Reply in Further Support of its Motions to Strike (Dkt. #143)

**BACKGROUND**

**A.    Bankruptcy Action.**

Debtor National Consumer Mortgage, LLC ("NCM") filed a voluntary petition under Chapter 11 of the Bankruptcy Code April 3, 2006. Complaint ¶ 4. NCM is a Limited Liability Company organized in the State of California that operated a mortgage broker business beginning in 2001. *Id*. The Debtor was comprised of two members: Sandra Favata, who owned a fifty-seven percent interest in the Debtor, and Dorothy Morisette, who owned a forty-three percent interest. *Id*. ¶ 8. Salvatore ("Sam") Favata ("Favata") is the husband of Sandra Favata, and the son of Dorothy Morisette.

Plaintiff John P. Brincko ("Brincko") was appointed as the Chapter 11 Trustee in NCM's bankruptcy case in May 2006. The Trustee brought an adversary proceeding against Defendant Rio Properties, Inc. ("Rio"). The Trustee alleges that in approximately 2004, NCM set up a Private Money Group which was a Ponzi scheme operated by Sam Favata. Through the Private Money Group, the Trustee alleges Favata and others solicited investments from individuals Favata claimed would be used for funding residential mortgage loans. *Id*. ¶ 9. All of the funds were deposited into NCM's co-mingled bank account. *Id*. ¶ 10.

The Trustee alleges Favata made unauthorized withdrawals in excess of $10,000,000.00 from NCM's bank accounts. *Id*. ¶ 13. Favata allegedly used these funds to purchase cashier's checks from Bank of America and Western Financial Bank made payable to himself. Favata then allegedly put the cashier's checks on deposit at the Rio and gambled some of the funds. The adversary action against the Rio seeks to recover funds the Trustee alleges were fraudulently transferred from NCM to Favata who exchanged the cashier's checks for casino chips at the Rio.

Rio denies the Trustee's allegations, and asserts that it merely provided Mr. Favata with casino chips in exchange for Bank of America cashier's checks, which it verified were legitimate, and that the Trustee is not entitled to recover sums Favata gambled at its casino under the Bankruptcy Code provisions the Trustee relies upon. Rio has asserted a good faith defense under Section 550(b) of Title 11 of the Bankruptcy Code and Section 3439.08 of the California Civil Code.

**B.    Procedural History.**

On April 2, 2008 this aversary proceeding was initiated by Brincko ,the Chapter 11 Trustee of

Debtor NCM, against Defendant Rio in the Central District of California . The Trustee's complaint seeks to set aside what it alleges are fraudulent transfers pursuant to Section 544, 548, and 550 of the Bankruptcy Code, as well as under the Uniform Fraudulent Transfer Act, California Civil Code Section 3439 ("UFTA"). The Bankruptcy Court granted Rio's motion to dismiss the Trustee's first and second claims for relief based on Section 548 of the Bankruptcy Code concerning transfers made more than one year preceding the date of the petition in July 2008. The Bankruptcy Court also granted Rio's motion for partial summary adjudication finding in favor of Rio on a number of issues April 1, 2009. Specifically, the Bankruptcy Court ruled: (1) Rio is not the "initial transferee" under 11 U.S.C. § 550(a)(1) of any interest of the debtor in property; (2) Rio is not "the entity for whose benefit" such initial transfer was made under 11 U.S.C. § 550(a)(1); and (3) Rio is not liable under 11 U.S.C. § 550(a)(1). See Parties' Joint Status Report (Dkt. #120).

The Bankruptcy Court granted the Trustee's motion to take depositions. *Id*. ¶ 4. General fact discovery closed, with limited exceptions, August 14, 2009. *Id*. Targeted discovery continued after the August 14, 2009 discovery cutoff concerning certain disputed issues that were either resolved by stipulation or motion practice. *Id*. On March 11, 2010, the Bankruptcy Court heard the Trustee's motion to compel Rio to produce documents withheld on the ground of privilege. *Id*. ¶ 6. The motion to compel was resolved by stipulation between the parties which was approved by the court. *Id*.

On March 29, 2010, the Honorable Christina A. Snyder granted Defendant's motion to withdraw reference of this adversary proceeding from the Bankruptcy Court to the Central District of California. *Id*. ¶ 7. Judge Snyder issued an order granting Rio's motion to transfer venue to this district June 10, 2010. *Id*. ¶ 11 (Dkt. #109). The current motion for spoliation sanctions was filed in the Central District of California. However, the district judge there declined to reach the merits of the Defendant's pending motion in light of the order transferring venue. *Id*. ¶ 11, 12.

After this action was transferred to this district, the district judge entered a minute order requiring the parties to file a joint status report setting forth the current status of the action including a list of pending motions and/or other matters requiring the attention of the court, and a statement of counsel of any action required to be taken by the court. See Minute Order (Dkt. #113). This motion for sanctions, and related papers was referred to the undersigned for a decision.

**C.     Rio's Motion for Sanctions**.

In the current motion, Rio seeks spoliation sanctions against the Trustee arguing he allowed virtually all of Debtor NCM's business records to be destroyed. Rio alleges that the Trustee and his counsel actively sought to hide information from Rio by refusing to disclose information in response to hundreds of discovery requests and during related meet and confer conferences among counsel. Rio also contends that, because destroyed records are indispensable to the Trustee's case, and "Rio will undeniably be prejudiced without access to them, that the court should dismiss the Trustee's action, or in the alternative, issue an adverse instruction to the jury."

Rio claims that although Brincko was not appointed as the Chapter 11 Trustee until May 12, 2006, he had extensive pre-appointment communications with the Creditors' Committee and made fee applications for work done two weeks before his appointment. Brincko and one of his employees, Thora Thoroddsen, engaged in a two-hour conference call with the Committee and its counsel May 2, 2006, regarding business operations and other matters. Under these circumstances, Rio argues "it is inconceivable that the Trustee was unaware of the turbulent environment and allegedly fraudulent activity ongoing at the Debtor at the time of his appointment." Brincko testified at his deposition that after he was appointed most of the Debtor's relevant records were wilfully destroyed by an NCM employee, Richard Martinez. Mr. Martinez reportedly wiped the corporate computers clean, and destroyed the majority of the debtor's corporate records. Two years later, the Trustee sued Rio seeking to recover funds he alleges were fraudulently transferred to it. During discovery in the adversary proceeding, Rio engaged in extensive discovery. The Trustee maintained he had produced all responsive information, and did not inform Rio of Martinez's willful destruction of the Debtor's records. Rio did not learn until Brincko's deposition was taken December 1, 2009, about the destruction of the Debtor's records. The Trustee has produced his "reconstructed financial records" based on incomplete third-party records to pursue the Trustee's claims against Rio in this case.

Rio argues that the Trustee's failure to preserve relevant evidence requires spoliation sanctions, and that terminating sanctions may be appropriate because the Trustee's conduct is due to "willfulness, fault, or bad faith" citing *Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). Rio claims the Trustee's failure to preserve the Debtor's records qualifies as willful spoliation because the Trustee had

1  some notice that the documents were potentially relevant to the litigation before they were destroyed.
2  Additionally, Rio maintains that the Trustee's failure to preserve the Debtor's records constitutes gross
3  negligence justifying terminating sanctions. Rio argues Brincko clearly had a duty to preserve evidence
4  by implementing a litigation hold to immediately secure the Debtor's books and records, and breached
5  his duty by failing to take adequate measures to preserve evidence. Additionally, Rio accuses the
6  Trustee of going to great lengths to hide the document destruction. Rio claims this supports its
7  arguments the Trustee's conduct was willful, grossly negligent, and at fault. Rio contends that the
8  Trustee lead it to believe that the documents it sought in discovery had never existed, and did not
9  disclose the document destruction in any written discovery response before his deposition was taken.

10  Rio contends that the Trustee's conduct in this matter warrants the sanction of dismissal under
11  the Ninth Circuit's five-factor test in *Anheuser-Busch v. National Beverage Distribs.,* 69 F.3rd 337, 348
12  (9th Cir. 2002). Rio cites a line of cases holding that, when a party destroys documents through its own
13  gross negligence, a presumption arises that the documents were relevant and would have supported its
14  adversary's case. Although the court should presume Rio has been prejudiced, the Ninth Circuit has
15  held that a finding of prejudice is not required for terminating sanctions under Rule 37. Moreover, Rio
16  argues it has been actually prejudiced because the Trustee has submitted nothing to support its claims
17  against the Rio other than "records reconstructed by his team based on a factual record with seemingly
18  huge gaps." The Trustee claims to have reconstructed the financial records of NCM based on bank and
19  other third-party records, but cannot confirm that all of these third parties have provided complete
20  records, or that all relevant third parties have been identified. Additionally, Rio claims, based on the
21  deposition testimony of Favata taken in this case, and the few Debtor-created documents produced to
22  date, that NCM's mortgage division was highly profitable. This evidence, coupled with the lack of
23  records, "undermines the Trustee's conclusory allegations of complete and total insolvency at the time
24  of each of the Alleged Transfers."

25  Rio asserts that the destruction of evidence in this case makes it nearly impossible to adjudicate
26  the case on its merits. Acknowledging that this factor often cuts against dismissal, Rio asserts the lack
27  of the Debtor's complete financial records makes it impossible to know whether the Debtor was solvent
28  or insolvent on the date of each of the alleged transfers involved in this adversary proceeding. Rio also

acknowledges that the Bankruptcy Code does not require that the Debtor be insolvent when "actual intent fraudulent transfers" are alleged.  However, Rio claims it is unclear whether Favata had the requisite intent to defraud creditors at the time of each of the alleged fraudulent transfers, and that there is no evidence that Favata's intent can be imputed to the Debtor.  Rio maintains the destroyed corporate records are likely to contain information that would shed light on the corporate organization as well as Favata's role which have now been lost to Rio forever.  Additionally, the destruction of evidence means the Trustee cannot proffer evidence of its damages.  Sanctions less drastic than dismissal are not appropriate because Rio has been deprived of evidence necessary to attack the Trustee's *prima facie* case, and is left to rely on the Trustee's self-serving "reconstructed" records.

If the court is not inclined to order case-terminating sanctions, Rio requests that the court give the jury an adverse inference instruction.  Specifically, Rio requests that the court instruct the jury that the Trustee had control over the evidence and an obligation to preserve it, that records were destroyed with a culpable state of mind, and that the jury may infer that the destroyed evidence would have been detrimental to the Trustee's case.

**D.    Trustees Opposition.**

The Trustee's opposition argues that the sole basis for the Rio's extraordinary request for the sanction of dismissal is based on four pages of Mr. Brincko's 200-page deposition which is "taken entirely out of context", and the testimony of Favata, a convicted felon.  The Trustee brought this complaint against Rio to recover in excess of $10,000,000.00 of the Debtor's funds that Favata diverted to himself and transferred to the Rio between September 2003, and March 2006.  The opposition is supported by the Declarations of the Trustee, Thora Thoroddsen, his assistant, outside bankruptcy counsel Lorraine Loder, and independent accountant, Conrad Nilo.  Loder and Nilo attest that NCM's financial records were extremely limited and incomplete before the Trustee's appointment.  Additionally, Nilo avers that he worked continuously for the Debtor before and after the Trustee's appointment, and that no financial records were destroyed after the Trustee's appointment.  The Trustee also claims that, before his appointment, independent professionals, including Loder and Lipkin & Associates ("L&A") implemented a litigation hold and seized control over the Debtor's financial records.  The Trustee maintains that L&A segregated the scant financial records that existed before the

bankruptcy petition was filed, and that, Nilo and others, began reconstructing financial records before the Trustee's appointment. The Debtor's documents were reportedly maintained in a locked office to which NCM's insiders, including Martinez, did not have access. As a result, Martinez (a security officer of the Debtor) had no ability to destroy the Debtor's corporate and financial records.

The Trustee also contends that at most, Martinez deleted some audio and video surveillance on computers that were in his office. The Trustee does not know when Martinez did so. The Trustee also argues that he acted reasonably and swiftly discharged Martin as soon as L&A's employees informed him of their belief that Martinez was an insider, within the first few hours that he was at NCM's office following his appointment.

The Trustee argues the court should deny Rio's motion because it cannot show that any missing evidence is favorable to it. Favata plead guilty to committing mail fraud through the Debtor, and diverting millions of dollars to himself, which the Trustee argues, conclusively establishes that the transfers at issue in this adversary proceeding were made with fraudulent intent. Additionally, Favata's operation of a Ponzi scheme during the relevant time frame, and the Trustee's reconstruction of the Debtor's financial records, also establish the Debtor's insolvency at the time of the transfers involved in this case. The Trustee produced all of the reconstructed records to Rio before Mr. Brincko's deposition was taken. Thus, Rio's claims that the Trustee was negligent or acted in bad faith are specious, and is a transparent effort to avoid a disposition on the merits.

The Trustee argues that Rio cannot make its required clear showing that the Debtor's financial books and records once existed, were destroyed, and that the destruction occurred after the Trustee's appointment. The opposition and supporting documents detail the chronology of the Ponzi scheme operated by Favata, the admissions Favata made in his plea agreement in a sentencing memorandum, and at his deposition in this case as well as the pre-petition activities of the Debtor.

The Trustee asserts that the Debtor did not hold formal meetings or have records of any minutes of meetings, had no Chief Financial Officer, and that Favata maintained exclusive control over the checkbook of the Debtor and diverted whatever monies he thought were appropriate or needed for himself. Neither Favata nor NCM maintained a consolidated financial statement. Favata's wife,
///

1   Sandra Favata, prepared the April 3, 2006 bankruptcy petition.  The petition reflected that NCM's
2   liabilities exceeded its assets by more than $30,000,000.00.
3       Favata turned himself into the FBI April 20, 2006.  Favata testified at his deposition in this case
4   that he believed NCM was solvent when he turned himself into the FBI.  However, the Trustee argues
5   this testimony is incredible.  Favata has admitted he operated a Ponzi scheme, diverted money to his
6   own use, and was "out of control."
7       The Trustee relies on the declaration of the Debtor's general bankruptcy counsel, Loder, who
8   avers that prior to filing the petition, she instructed the Debtor's principals and employees to place a
9   litigation hold on the Debtor's records, and expressly told them to preserve all financial books and
10  records.  The debtor formally retained L&A March 17, 2006 before filing the bankruptcy petition.  L&A
11  was given responsibility for taking control of the Debtor's financial information and computer access,
12  arranged to hire Nilo to direct the creation of internal books that the Debtor did not have, and spent in
13  excess of 250 hours providing these services before the Trustee was appointed.
14      The Trustee avers that he was appointed May 12, 2006, after the close of business.  Early on
15  Monday morning, May 15, 2006, he arrived at NCM with Thoroddsen to seize control, met with L&A,
16  and was advised that L&A had seized control of the Debtor's financial records.  L&A informed the
17  Trustee that the Debtor's books and records were non-existent.  When a representative of L&A advised
18  Brincko that Otis Rushing and Richard Martinez were "insiders" Brincko discharged them.  The
19  Trustee also claims that he reinforced the litigation hold already in place May 15th, changed all the
20  locks on the Debtor's offices, searched all desks at the office and arranged to be the only signatory on
21  the Debtor's bank accounts.  He also directed that all computers present at NCM be imaged.  No
22  meaningful financial records or books were located, although there were voluminous records regarding
23  the mortgage brokerage business.
24      Brincko disputes that Martinez destroyed any financial books and records of the Debtor, and
25  asserts that the Rio has taken selective portions of his deposition testimony out of context.  Brincko
26  testified at his deposition that he suspected Martinez had deleted data from computers in Martinez's
27  office.  However, these computers were dedicated to support NCM's audio and video surveillance
28  systems, and "in no way impacted the Debtor's financial records."  The Trustee employed two

computer consultants to attempt to recover any data from the computers for the surveillance system, which was ultimately unsuccessful.

The opposition relates the efforts made by the Trustee to reconstruct the Debtor's financial records from bank records, and the Debtor's voluminous mortgage brokerage records. The Trustee denies that any of the Debtor's financial books and records were ever destroyed after his appointment, and states that the only evidence of missing accounts pertain to off-shore accounts to which Favata diverted funds.

In January 2010, the Trustee persuaded the FBI to turn over computers it seized from Favata when he turned himself in on April 20, 2006. The Trustee located an electronic file on these computers which detailed the investments in Favata's Ponzi scheme. The Trustee claims these records show Favata owed investors in excess of $25,000,000.00, which is "highly consistent with the Trustee's reconciliation."

Finally, the Trustee maintains that Rio knew at the outset of this case that the Debtors records were destroyed, missing or in disarray. The Trustee repeatedly apprised the Bankruptcy Court of his efforts to reconstruct the records in light of these circumstances and cites references to publicly docketed Status Reports in the record to substantiate his claims.

**E.     Rio's Reply.**

Rio's reply argues the Trustee has failed to provide any admissible evidence to contradict the Trustee's sworn deposition testimony that the Debtor's computer files were destroyed after he took office. Rio reiterates its arguments that the Trustee has obstructed the discovery process, prevented Rio from learning of the destruction of the Debtor's documents, and that case-terminating sanctions are appropriate. Rio asserts that the Trustee admitted that he failed to fulfill his duty to preserve the Debtor's records in an application before the Bankruptcy Court which stated the Trustee was aware of the tumultuous environment of the Debtor and that its principals "could not be trusted." Rio also claims that following his deposition testimony, the Trustee produced voluminous additional documents "the vast majority of which were produced without bates numbers and in raw form." The documents were produced without any evidence regarding authenticity, chain of custody, or other necessary information, and therefore Rio was denied the opportunity to ask the Trustee questions about them at

his deposition, or use them to identify other relevant witnesses to depose. Rio asserts that the Trustee's opposition seeks to introduce affidavits which contradict his earlier testimony and which contain inadmissible hearsay, improper expert testimony, improper lay opinion testimony, and lack foundation and personal knowledge.

Rio argues that the Trustee attempts to minimize his admission that essential files of the Debtor were erased by claiming he was referring only to surveillance materials on Martinez's computer. However, his deposition testimony does not state that the erased computer data he testified about was "surveillance" data. Rather, he testified at his deposition that he suspected that Martinez destroyed evidence on the corporate computers and central files of the Debtor. Rio therefore reiterates its request that the court impose spoliation sanctions by dismissing this adversary proceeding against it, or, in the alternative, that the court give an adverse inference instruction to the jury.

## **DISCUSSION**

Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. *United States v. Kitsap Physicians Svs.,* 314 F.3d 995, 1001 (9th Cir. 2002) (*citing Akiona v. United States,* 938 F.2d 158, 161 (9th Cir. 1991)) (a party engages in spoliation "as a matter of law only if they had 'some notice that the documents were potentially relevant' to the litigation before they were destroyed"); 7-37A *Moore's Federal Practice - Civil* § 37A.55. A party must preserve evidence it knows or should know is relevant to a claim or defense of any party, or that may lead to the discovery of relevant evidence. *Moore's* at § 37A.55; *see also United States v. Kitsap Physicians Serv.,* 314 F.3d 995, 1001 (9th Cir. 2002); *In re Napster*, 462 F.Supp.2d 1060, 1067 (N.D. Cal. 2006) (*citing Nat'l Ass'n of Radiation Survivors v. Turnage,* 115 F.R.D. 543, 556-57 (N.D. Cal. 1987) (noting, "[a]s soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action"). The duty to preserve arises not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation. *In re Napster,* 462 F.Supp.2d at 1067 (duty to preserve begins when a party should have known that the evidence may be relevant to future litigation).

///

District courts may impose sanctions for spoliation of evidence as part of their inherent power to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Napster*, 462 F.Supp.2d at 1066 (*citing Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). Courts may sanction parties responsible for spoliation of evidence in three ways. First, a court can instruct the jury that it may draw an adverse inference against the party or witness responsible for destroying the evidence. *See Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). Second, a court can exclude witness testimony based upon the destroyed evidence and proffered by the party responsible for destroying the evidence. *Id.* at 1329. Third, the court can dismiss the claim of the party responsible for destroying the evidence. Dismissal, however, is only appropriate where "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." *Leon v. IDX Systems Corp.,* 464 F.3d 951, 958 (9th Cir, 2006) (*citing Anheuser-Busch, Inc. v. Natural Beverage Distributors,* 69 F.3d 337, 348 (9th Cir. 1995). Before imposing the "harsh sanction" of dismissal, a court must consider the following factors: (a) the public's interest in expeditious resolution of litigation; (b) the court's need to manage its dockets; (c) the risk of prejudice to the party seeking sanctions; (d) the public policy favoring disposition of cases on their merits; and (e) the availability of less drastic sanctions. *See Leon,* 464 F.3d at 958 (*citing Anheuser-Busch*, 69 F.3d at 348).

The Ninth Circuit has held that a party does not engage in spoliation when, without notice of the evidence's potential relevance, it destroys the evidence according to its policy or in the normal course of its business. *United States v. $40,955.00 in U.S. Currency*, 554 F.3d 752, 758 (9th Cir. 2009) (no indication that evidence destroyed with knowledge that it was relevant to litigation) (*citing United States v. Kitsap Physicians Service*, 314 F.3d 995, 1001-02 (9th Cir. 2002) (no spoliation where evidence destroyed in normal course of business and no indication that relevant to anticipated litigation); *State of Idaho Potato Comm'n v. G&T Terminal Packaging, Inc.,* 425 F.3d 708, 720 (9th Cir. 2005) (same).

The moving and responsive papers, accompanying declarations and exhibits, and related motions to strike consist of well over in excess of 1,500 pages of material, all of which the court has carefully reviewed. The court's time and resources simply do not permit systematic citation to the entire record in resolving all of the parties' factual disputes. Some of Defendant Rio's objections to the

declarations submitted by the Trustee in support of the opposition are well taken. A number of the statements lack sufficient foundation, are not supported by personal knowledge of the declarant, and are hearsay. However, the court has primarily relied on portions of the sworn declarations of the Trustee, the Debtor's general bankruptcy counsel, Ms. Loder, and the declaration of Conrad Nilo, the former employee of L&A who was later retained by the Trustee. Although portions of their declarations lack foundation, each personally attest to information in their unique personal knowledge. The court has also carefully reviewed the voluminous deposition testimony of the Trustee, who was deposed in his capacity as a Rule 30(b)(6) designee.

Having reviewed and carefully considered the parties' voluminous moving and responsive papers, the court finds that the Rio has not established that spoliation of evidence occurred that warrants case terminating or other sanctions. The voluntary petition for bankruptcy was filed April 3, 2006. Prior to filing the petition, the Debtor retained Lorraine Loder as its bankruptcy counsel. Before the petition was filed, Ms. Loder instructed the Debtor's principals and employees to effectuate a litigation hold, expressly telling them to preserve all financial books and records of the Debtor. Loder Declaration, Dkt. #51 ¶ 2. On March 7, 2006, the Debtor formally retained Lipkin & Associates. *Id*. ¶ 3. Conrad Nilo was hired by L&A to perform accounting work for the Debtor. Nilo Declaration, Dkt. #49 ¶ 1. He began working at NCM a few days after it had filed for bankruptcy on April 3, 2006. *Id*. ¶ 2. In April 2006, his primary assignment was to create a consolidated accounting system to support NCM's ongoing mortgage brokerage business and to enable NCM to accurately report to the Bankruptcy Court regarding its ongoing financial status. *Id*. ¶ 3. Nilo attests that NCM lacked such an accounting system before his bankruptcy filing, and that he created a new accounting system by utilizing the QuickBooks accounting software. *Id.* He was provided with access to the Debtor's financial books and records before the Trustee was appointed. *Id*. ¶ 4. He was provided with a QuickBooks file that had been prepared by Salvatore Favata's assistant, Vanessa Lemon. *Id.* This pre-petition QuickBooks file reflected the computer-generated checks that had been written by NCM. Nilo saved a copy of this QuickBooks file on his local computer. *Id*.

Nilo additionally avers that L&A agents on site at NCM kept copies of notes relating to investments investors made in the Private Money Division, operated by Salvatore Favata, locked in an

...

office. *Id*. ¶ 5. Nilo was provided with copies of some worksheets that NCM had prepared in Excel that reflected the revenue generated by the mortgage broker business on a monthly basis. *Id*. These worksheets were supported by voluminous borrowers' files stored at NCM. *Id*. NCM maintained no financial records that consolidated the revenue from the brokerage business with the operating expenses of the entity. *Id*. Nilo confirmed with both Lemon and Debbie Waldrin, who worked closely with Sandra Favata, that he had been provided access to all financial records at NCM. *Id*

On April 20, 2006, shortly after the Debtor filed a bankruptcy petition, Favata came under the FBI's radar. His computers which contained records of the Debtor's "bad business" were seized by the FBI as evidence, and not released to the Trustee until January 2010. Favata was indicted, confessed his guilt, plead guilty, and made detailed admissions of the Ponzi scheme he engaged in which bilked investors out of in excess of $20,000,000.00, a large portion of which he diverted to his own use. He was deposed for days in this case and confirmed the statements he made in his written plea agreement. He testified that he believed that as long as his wife, Sandra Favata, remained President of NCM, he might be able to keep the Ponzi scheme from falling apart. However, he also clearly testified that he kept whatever books and records were maintained as the "bad business", diverted money for his personal use, and was "out of control."

Rio's arguments that the Trustee was grossly negligent by failing to act more promptly to prevent NCM's security officer, Martinez, from destroying records falls woefully short of showing any spoliation of evidence of the Ponzi scheme or diversion of investor funds, or destruction of corporate and financial records. The Debtor's bankruptcy counsel instructed the Debtor to preserve financial books and records, and hired L&A to perform accounting services. It is hardly surprising that someone operating a Ponzi scheme and diverting millions to his own use might not keep detailed organized records of his fraudulent scheme or, for that matter, of the legitimate portions of the business. Favata testified that he kept records of the "bad business" on his computers which were seized by the FBI April 20, 2006. The Trustee was able to get the computers from the FBI in January 2010, found relevant documents and produced them to Rio.

Brincko's Rule 30(b)(6) deposition testimony is admittedly susceptible of different interpretations. Reviewing certain portions of the testimony in isolation could support Rio's argument

1  that Brincko believed Martinez erased the Debtor's corporate books and records. However, reviewing
2  the voluminous moving and responsive papers as a whole, the court finds the Trustee's explanation of
3  his testimony concerning Martinez's activities more likely and persuasive. The court accepts the
4  representations of the Trustee that the computer records the Trustee believes Martinez erased before the
5  Trustee first went to NCM on Monday, May 15, 2006, were surveillance records kept in Martinez's
6  own office which recorded information linked to NCM's audio and visual surveillance equipment.
7  Moreover, bankruptcy counsel had already instructed the Debtor to preserve records and hired an
8  outside firm to assist. Reviewing the record as a whole, the court finds it highly unlikely that *if*
9  Martinez did, in fact, erase computers in his office, those computers contained any financial or
10 corporate records relevant to these proceedings. Finally, the court finds the record simply does not
11 support a finding Brincko breached a duty to preserve relevant evidence.

For all of the foregoing reasons,

**IT IS ORDERED** that:

1. Rio's Motion for Sanctions Due to Spoliation of Evidence (Dkt. #29) is **DENIED**.
2. The Motions to Strike (Dkt. ##82, 84, 85 and 87) are **GRANTED in part** and **DENIED in part**.

Dated this 30th day of March, 2011.

_____
Peggy A. Leen
United States Magistrate Judge