1
2
3
4

**UNITED STATES DISTRICT COURT**

5

**DISTRICT OF NEVADA**

6
7   JOHN P. BRINCKO,                          )
8                          Plaintiff,          )          Case No. 2:10-cv-00930-PMP-PAL
                                               )
9   vs.                                        )          **ORDER**
                                               )
10  RIO PROPERTIES, INC.,                      )          (Mot. Compel - Dkt. #200)
                                               )
11                         Defendant.          )
    _____)
12

13          Before the court is Defendant Rio Property, Inc.'s Notice of Motion and Motion to Compel

14  Deposition of Robert Leahy, and to Grant Sanctions Against the Trustee; Memorandum of Points and

15  Authorities in Support Thereof (Dkt. #200).  The court has considered the Motion, Memorandum of

16  Points and Authorities in Opposition (Dkt. #208), and Rio's Reply (Dkt. #210).

17                                      **BACKGROUND**

18          The motion seeks an order compelling Plaintiff's expert, Robert Leahy, to appear and answer

19  questions at a second session of his deposition that he was instructed not to answer at his July 31, 2011,

20  deposition.  The motion asserts that counsel for the Trustee instructed Mr. Leahy to refuse to answer a

21  number of questions, although no attorney-client privileged information was sought, and no attorney-

22  client privileged objections were made.  Rather, counsel for the Trustee instructed Mr. Leahy not to

23  answer questions because he was "uncomfortable" having the witness answer questions on a subject

24  which counsel for the Trustee was not sufficiently familiar.  Rio has also filed a *Daubert* motion

25  asserting Mr. Leahy should not be permitted to testify as an expert which is currently pending before the

26  district judge.  However, if the motion is denied and Mr. Leahy is permitted to testify, Mr. Leahy will

27  opine that Rio employees working in the cashier's cage and in another areas of its Sports Book should

28  have figured out that Salvatore "Sam" Favata ("Favata") was looting money from the National

1   Consumer Mortgage ("NCM") and/or its investors because Favata presented a series of high-value

2   cashier's checks from nationally recognized banking institutions.  Rio learned that while Leahy was an

3   executive at Myriad Entertainment & Resorts ("Myriad"), Mr. Leahy apparently failed to uncover a

4   "massive fraud" perpetrated at Myriad.  Rio attempted to ask him questions concerning this experience

5   at Myriad, believing it is clearly relevant to his proffered testimony in this case.  Counsel for the Trustee

6   instructed him not to answer questions, including foundational questions, such as whether he was

7   represented by counsel in connection with that matter.  Rio argues this violated Rule 30(c)(2), and that

8   Mr. Leahy should be compelled to answer questions and that the Trustee and/or his counsel should be

9   ordered to pay fees and expenses related to the reexamination of the witness.

10          After the deposition concluded, counsel for Rio wrote to counsel for the Trustee requesting a

11   telephonic meet-and-confer concerning the instructions not to answer, and inquiring whether the

12   Trustee would agree to make Mr. Leahy available for a continuation of his deposition at the Trustee's

13   expense.  Counsel engaged in extensive written communications and phone conversations, but the

14   Trustee continues to refuse to make Mr. Leahy available for a continuation of his deposition.

15          Sanctions are appropriate in this case, it is argued, because counsel for the Trustee's improper

16   instructions not to answer impeded, delayed and frustrated Rio's inquiry regarding a relevant topic.

17   Specifically, Mr. Leahy has offered to opine that the Rio should have uncovered Mr. Favata's

18   fraudulent activities.  In his expert report, Mr. Leahy specifically references his work for Myriad as one

19   of the bases that qualifies him as an expert in the field of appropriate due diligence at casino companies.

20   While Mr. Leahy was an executive at Myriad, Rio asserts a "massive fraud" was perpetrated there

21   which Leahy failed to uncover.  Under these circumstances, Mr. Leahy's experiences at Myriad are "fair

22   game, particularly any experiences with respect to due diligence and any allegedly fraudulent activities

23   that he failed to uncover."  Sanctions are authorized under Civil Rule of Civil Procedure 30(d)(2), and

24   the Trustee's improper instructions forced Rio to incur needless expense to file this motion.

25   Additionally, if the motion is granted, Rio will incur additional unwarranted expenses to depose Mr.

26   Leahy a second day which would not have been incurred if the Trustee had simply allowed Mr. Leahy

27   to answer Rio's questions.

28          The Plaintiff Trustee opposes the motion asserting Mr. Leahy was engaged as an expert witness

to "analyze whether the Rio's management properly identified, reviewed and analyzed" Sam Favata's gaming transactions between 2003, and 2006.  During this period of time, Favata bet almost ten million dollars at Rio's Race and Sports Book.  The money was pilfered from victims of his Ponzi scheme.  Mr. Leahy's report provided charts and analyses of Favata's gaming patterns over a four-year period.  His report opines that Favata engaged in unusual gaming behavior, and offers opinions concerning "what due diligence he believed casino management had an obligation to undertake from a financial perspective in such circumstances."

During Mr. Leahy's deposition, counsel for Rio questioned Mr. Leahy about an unrelated, ongoing dispute between his former employer, Myriad, and Carl Grein, a potential investor who Myriad contends defrauded it out of approximately $170,000.00.  Rio's counsel asked Mr. Leahy whether, in his opinion, Myriad conducted an adequate investigation into Mr. Grein's background to insure that he could finance the project.  The Trustee's counsel was unaware of the Grein action and had no connection with it.  Counsel for the Trustee argues that Mr. Leahy, who was the Executive Vice President of Finance of Myriad, had worked with Myriad's counsel in connection with the Grein action as a fact witness.  Mr. Leahy was concerned about his responsibilities to Myriad as well as what privileges may or may not be implicated in his testimony about the Grein action in this case.  Counsel for the Trustee indicates that he cannot address those questions, but that Myriad's counsel can.  Counsel for the Trustee asserts that, at the request of Mr. Leahy and Myriad's counsel, he has "asked that counsel for Myriad be involved to the extent of questions about the Grein action."  Rio refused to contact counsel for Myriad because Myriad's counsel has not been admitted *pro hac vice* or made a special appearance in this action.  Counsel for the Trustee and the witness, as well as Myriad's counsel, requests that if the court directs the continuation of Mr. Leahy's deposition, the deposition should be completed telephonically, and Myriad's counsel should be permitted to participate to interpose any objections to preserve Myriad's privilege.

Counsel for the Trustee was not aware at the time of Mr. Leahy's deposition that Myriad had filed a lawsuit against Carl Grein accusing him of stealing approximately $170,00.00 from it under the guise of providing financing for a gaming project.  When Mr. Leahy was asked whether, in his opinion, Myriad conducted an adequate investigation into Mr. Grein's background to insure he could finance the

3

1   project, counsel for the Trustee consulted with Mr. Leahy and learned that Leahy had worked with

2   Myriad counsel in prosecuting the Grein matter.  Mr. Leahy was concerned about any privileged

3   information he might disclose, and counsel for the Trustee suggested Myriad's counsel be consulted.

4   Rio's counsel took issue with this suggestion.  Counsel for the Trustee suggested that the parties contact

5   the court to get a definitive direction on how to proceed.  However, counsel for Rio indicated he did not

6   want to bother the judge and demanded that the questions be answered or that the deposition be

7   terminated immediately.  Counsel for the Trustee indicated it made more sense to complete as much of

8   the deposition as possible because all counsel had traveled some distance for the deposition, the

9   deposition was taken on the last day for expert discovery, and difficulties had been encountered because

10  of Mr. Leahy's medical issues.

11       The deposition continued and Mr. Leahy answered questions regarding Myriad, except those

12  related to the Grein action.  However, Rio's counsel persisted in asking Mr. Leahy to describe the

13  nature of the fraud that Mr. Grein perpetrated while Leahy worked for Myriad.  Counsel for the Trustee

14  again suggested contacting Myriad's counsel or the court while the deposition was ongoing, but Rio's

15  counsel declined.  Subsequent efforts to resolve the parties' discovery dispute were unsuccessful.

16       The Trustee argues that counsel's instructions not to answer Rio's questions regarding the Grein

17  litigation implicated the attorney-client privilege and were proper pursuant to Rule 30(c)(2).  If counsel

18  for the Trustee had not interjected and Leahy had answered, Myriad's privilege would have been

19  waived.  Rule 30(c)(2) permits an instruction not to answer to preserve privilege.  After consulting with

20  Mr. Leahy, counsel for the Trustee concluded Myriad's privilege may be implicated by questions

21  related to the Grein litigation, and therefore, appropriately objected.  Counsel for the Trustee argues that

22  counsel for Myriad would have to be present to determine whether questions about the Grein litigation

23  called for disclosure of privileged information and whether the client wished to assert the privilege.

24  Mr. Leahy was entitled to have counsel present to advise him on the privilege issue whether or not he is

25  a party.  Mr. Leahy did not know whether or not the information he had was privileged and counsel for

26  the Trustee, therefore, appropriately suggested guidance from Myriad's counsel.  When counsel for Rio

27  refused to acknowledge Myriad's right to be represented at the deposition on these matters, counsel for

28  the Trustee suggested that counsel contact this court, but Rio again refused.

4

1    Counsel for the Trustee also disputes that it was obligated to seek a protective order to preserve

2    privilege.  Rule 30 states in the disjunctive that a person may instruct a deponent not to answer on

3    grounds of privilege or seek a protective order.  In this case the witness was instructed not to answer the

4    questions, and a protective order was not required.  Mr. Leahy revealed that as a senior officer, he

5    participated with Myriad's counsel in pursuing the Grein matter.  As such, the potential for privilege

6    issues arose and the Trustee's counsel properly interposed objections.  The Trustee acted in good faith

7    in "interjecting the privilege", and suggesting that counsel for Myriad be consulted, and there is

8    therefore no basis to impose sanctions against the Trustee.

9    The Trustee also argues that the Grein litigation has little relation to the issues in this case, or

10   the pending motions for summary judgment.  Rio has now filed *Daubert* motions to strike Plaintiff's

11   experts, including Mr. Leahy.  Under the procedural posture of this case, if the court were to grant

12   summary judgment in Plaintiff's favor as Plaintiff expects, or strike Mr. Leahy's testimony, this motion

13   would be moot.  The Trustee therefore asks that any continuation of Mr. Leahy's deposition be

14   adjourned until after decision of summary judgment and the *Daubert* motions are decided.

15   Additionally, the Trustee requests that if the deposition is ordered to proceed, that Myriad's counsel be

16   permitted to participate, and that the deposition be taken telephonically.

17   Defendant replies that questions asked by counsel for Rio at Mr. Leahy's deposition did not

18   implicate any attorney-client privilege communications.  Rio argues the Trustee failed to establish that

19   an attorney-client relationship existed or that Mr. Leahy was privy to attorney-client communications.

20   Rio also contends that questions directed to whether Mr. Leahy was represented by counsel and his

21   personal knowledge of Myriad's failure to detect the alleged fraud are not protected by the attorney-

22   client privilege.  Because counsel for the Trustee failed to follow proper procedures in instructing Mr.

23   Leahy not to answer questions about the alleged fraud at Myriad, the court should order Mr. Leahy to

24   appear and answer appropriate questions, and sanction the Trustee for improper interference with Rio's

25   exploration of facts relevant to Leahy's purported qualifications.

26   ## DISCUSSION

27   Examination and cross-examination of witnesses during depositions should proceed as it does at

28   trial.  *Damaj v. Farmers Insurance Co., Inc.,* 164 F.R.D. 559, 560 (N.D. Okla. 1995).  "In general,

1   counsel should not engage in any conduct during a deposition that would not be allowed in the presence

2   of a judicial officer."  Advisory Committee Note to Fed.R.Civ.P. 30(d), 146 F.R.D. at 666.

3        Rule 30 is quite clear on what types of objections counsel may make during a deposition, and

4   when counsel may instruct a deponent not to answer a question.  Rule 30(c)(2) provides, in relevant

5   part:

> Any objection must be stated concisely in a non-argumentative and non-suggestive manner.
> A person may instruct a deponent not to answer only when necessary to preserve a privilege,
> to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

8   Fed.R.Civ.P. 30(c)(2).

9        Counsel may instruct a witness not to answer a deposition question only under three

10  circumstances: (1) "when necessary to preserve a privilege;" (2) "to enforce a limitation on evidence

11  directed by the court;" or (3) to protect a witness from an examination "being conducted in bad faith or

12  in such a manner as unreasonably may annoy, embarrass, or oppress the deponent or party."

13  Fed.R.Civ.P. 30(c)(2) & (d)(3)(A).  A lawyer may not instruct a witness not to answer repetitious,

14  harassing or argumentative deposition questions.  *See Fondren v. Republic American Life Ins.,* 190

15  F.R.D. 597, 600 (N.D. Okla. 1999).  The remedy for oppressive, annoying and improper deposition

16  questioning is not simply to instruct a witness not to answer.  Rather, it requires suspending the

17  deposition and filing a motion under Rule 30(d)(3).  Simply put, there are very few circumstances in

18  which an instruction not to answer a deposition question is appropriate.

19       Rule 30(d)(3) permits a deponent or party to move to terminate or limit a deposition "on the

20  ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or

21  oppresses the deponent or party."  Fed.R.Civ.P. 30(d)(3)(A).  The rule specifically authorizes the court

22  to limit the scope and manner of the questioning as provided in Rule 26(c).  Fed.R.Civ.P. 30(d)(3)(B).

23  Rule 37(a) provides an alternate method to obtain a ruling on the propriety of the refusal of a deponent

24  to answer questions, or a lawyer's instruction not to answer.  *See* Fed.R.Civ.P. 37(a)(B)(i) ("A party

25  seeking discovery may move for an order compelling an answer . . . if a deponent fails to answer a

26  question asked under Rule 30 or 31.")

27       Rule 37(a)(3)(C) permits a party asking questions for which answers are not provided during a

28  deposition to either complete the deposition or adjourn the examination before moving for an order

compelling disclosure. Rule 37(a)(5) mandates that the court require a party or deponent whose conduct necessitated a motion to compel to pay the movant's reasonable expenses in making the motion, including attorneys fees unless: (1) the motion was filed without a good faith effort to resolve the dispute without court action; (2) the party's objection was substantially justified; or (3) other circumstances make an award of expenses unjust.  A party who loses a motion to compel risks having a protective order entered limiting or prohibiting a line of questioning. Additionally, the prevailing party or deponent opposing a motion to compel is entitled to reasonable costs and attorney's fees for opposing the motion. *See* Rule 37(a)(5)(B).  The court may also enter a protective order and apportion the reasonable expenses of a motion to compel that is granted in part and denied in part. *See* Rule 37(a)(5)(C).

Rule 30(d) also authorizes the court to impose appropriate sanctions, including reasonable costs and attorney's fees incurred by a party or deponent filing a motion to terminate or limit a deposition. *See* Rule 30(d)(3)(C) ( providing that Rule 37(a)(5) applies to the award of expenses when a motion to terminate or limit a deposition is filed).

Sanctions, including costs and attorneys fees, may also be awarded under Rule 30 for conduct that the court finds "frustrated the fair examination of the deponent." Rule 30(d)(2) provides,

> The court may impose an appropriate sanction–including the reasonable expenses and attorneys fees incurred by any party–on a party who impedes, delays, or frustrates the fair examination of the deponent.

*Id.*

In addition to monetary sanctions, courts have admonished and censured attorneys for conduct unbecoming of a member of the bar. *Redwood*, 476 F.3d at 470 (noting "a censure is the more opprobrious label").  The court may order depositions taken a second time and that the cost be borne by the party whose counsel's conduct necessitated retaking the deposition. *See, e.g., O'Brien v. Amtrak*, 163 F.R.D. 232 236 (E.D. Pa. 1995).  In addition to monetary sanctions, the court also has the inherent power to sanction an attorney or party attorneys fees when either have acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 44 (1991).  Finally, 28 U.S.C. § 1927 authorizes sanctions against an attorney "who so multiplies the proceedings in any case to increase costs unreasonably and vexatiously." *Id.*

7

The court has carefully reviewed the moving and responsive papers and supporting declarations and exhibits, including Mr. Leahy's expert report and excerpts from the deposition cited by both sides. The court finds Mr. Leahy was improperly instructed to refuse to answer factual questions about the Grein litigation matter. Mr. Leahy was also improperly instructed to refuse to answer foundational questions designed to explore the applicability of any potential privilege.

It should not have been a surprise to counsel for the Trustee that counsel for Rio would inquire about Mr. Leahy's activities as an Executive Vice President for Myriad. Mr. Leahy's expert report identified his qualifications to offer opinion testimony in this case including his status as Executive Vice President for Myriad. The report explained that Myriad is a holding company that intends to own, operate and/or manage destination casino resort properties. Mr. Leahy's report indicates he was asked to "perform a financial analysis of Favata's transaction with the Rio Casino." He was also "asked to analyze whether the Rio's management properly identified, reviewed and analyzed Salvatore Favata's ("Favata") gaming transactions with the casino and engaged in the appropriate due diligence and responses thereto based on my financial and operating experience in the gaming industry." His report opines that Rio's management should have reviewed and analyzed Favata's gaming transactions and identifies the standard industry practices he believes would have identified Favata's "unusual behavior and transactions."

The questions counsel for Rio asked about the Grein litigation were clearly relevant and discoverable as Mr. Leahy identified his experience in the gaming industry generally, and with Myriad specifically as qualifying him to offer these opinions. Counsel for Rio elicited information from Mr. Leahy that Myriad was suing Grein. Leahy testified that Grein was an investor who defrauded Myriad by falsely presenting himself as an investor that was going to fund a Myriad project. Counsel for Rio asked whether in Mr. Leahy's opinion, Myriad conducted an adequate investigation into Mr. Grein's background to insure that he could finance the project. At this point, counsel for the Trustee asked to go off the record to discuss the Grein litigation with his client "to make sure that any of his testimony today is not impacted by any work he is doing with any legal counsel at Myriad." Exhibit A-3 to Rio's motion (Dkt. #200), excerpts of Leahy deposition at p. 53. Counsel for Rio attempted to ask some foundational questions to determine whether Mr. Leahy had spoken to any attorneys and objected to

1    counsel for the Trustee to going off the record and discussing the matter with Mr. Leahy.  Counsel for
2    the Trustee insisted and a 22-minute break was taken.  When the deposition resumed, counsel for the
3    Trustee stated he was "not comfortable with permitting the witness to respond to questions relating to
4    that ongoing legal matter." *Id*. at p. 55.  He then indicated that he "will be directing the witness not to
5    answer at this time."  *Id*.  However he also indicated he was "happy to put the judge on the phone"
6    because he did not want to put Mr. Leahy "into any detrimental position without having the proper
7    judge or other proper authority involved." *Id*.
8        Counsel for Rio attempted to clarify whether Mr. Leahy would be instructed not to answer any
9    questions related to the Grein matter "even if I clearly state that I am only asking for his personal
10   knowledge, nothing based on communications with counsel." *Id*. at p. 56.  Counsel for the Trustee
11   insisted that Myriad's counsel should be present before any questions about the Grein matter were
12   answered.  Extensive arguments and colloquy among counsel ensued with counsel for each side
13   insisting it was the responsibility of opposing counsel to contact this court for direction or relief.  Mr.
14   Leahy did testify that he was retained by the law firm representing Myriad to produce an expert report
15   in the Grein litigation, and that the law firm was not representing Mr. Leahy in connection with the
16   Grein litigation.  Mr. Leahy was instructed not to answer a question which asked him to describe the
17   nature of the fraud that Mr. Grein perpetrated on Myriad.  After further colloquy among counsel,
18   counsel for the Trustee indicated that the witness would not answer any questions about the Grein
19   litigation.  Counsel for Rio again insisted that he was not asking about anything privileged.  Counsel for
20   the Trustee responded that it would not allow Mr. Leahy to answer any questions about the Grein
21   litigation unless Rio's lawyer's got the permission of Myriad's lawyers.
22       The court's review of the transcript excerpts of Mr. Leahy's deposition make it clear that
23   counsel for Rio was not attempting to elicit any privileged communications Leahy had with Myriad's
24   lawyers.  Rather, counsel for Rio was asking for non-privileged factual information about the Grein
25   litigation and Mr. Leahy's opinions concerning whether Myriad was diligent in uncovering Grein's
26   alleged fraud.
27       Mr. Leahy is offered as an expert to opine that Rio should have uncovered and stopped Favata's
28   fraud by using standard industry practices.  His report indicated he was qualified to offer these opinions

1    because of his experience in the gaming industry, and specifically at Myriad.  These questions were
2    clearly discoverable, and the witness was inappropriately instructed not to answer.

3    　　　　Counsel for the Trustee does not claim that any of the questions called for the disclosure of
4    attorney-client privileged information.  At most, counsel for the Trustee argues certain questions posed
5    "implicated" Myriad's attorney-client privilege.  Rule 26(b)(5)(A) requires a party withholding
6    discoverable information on the basis of privilege to: "(i) expressly make the claim; and (ii) describe the
7    nature of the documents, communications, or tangible things not produced or disclosed–and do so in a
8    manner that, without revealing information itself privileged or protected, will enable other parties to
9    assess the claim."  Fed.R.Civ.P. 26(b)(5)(A)(i, ii).  Counsel for the Trustee did not comply with the
10   requirements of Rule 26(b)(5)(A) by providing sufficient specifics to enable counsel for Rio to assess
11   the validity of the privilege claim.  Counsel for the Trustee also prevented counsel for Rio from asking
12   foundational questions intended to explore the existence and validity of any attorney-client privileged
13   communications.  Counsel for Rio expressly stated that he was not seeking to obtain confidential
14   communications or legal advise exchanged between Mr. Leahy and counsel for Myriad.  Counsel for
15   Rio made it clear that he was only trying to determine factual information about the alleged fraudulent
16   activity engaged in by Grein, and Mr. Leahy's opinions concerning the adequacy of any investigation
17   conducted by Myriad to uncover Grein's fraudulent activities.

18   　　　　A witness's personal knowledge about facts is not privileged.  *See*, *e.g. Upjohn Co. v. United*
19   *States,* 449 U.S. 383, 395-396 (1981).  The attorney-client privilege exists where legal advice of any
20   kind is sought from a professional legal advisor in her capacity as a legal advisor concerning
21   communications relating to that purpose, made in confidence, by the client.  *In re: Fischel*, 557 F.2d
22   209, 211 (9th Cir. 1997).  These communications are protected from disclosure by the client or legal
23   adviser unless the privilege is waived.  *Id.*  The party asserting the privilege bears the burden of proof
24   and must make a *prima facie* showing that the information it seeks to protect as privileged satisfies
25   these essential elements.  *In re: Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992).

26   　　　　A witness may not refuse to disclose relevant facts within his knowledge because those facts
27   were communicated to an attorney.  *Id.*  The attorney-client privilege protects confidential disclosures
28   made by a client to an attorney to obtain legal advice, and an attorney's advice in response to such

1    disclosures. *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) (quotation omitted) *cert denied*

2    520 U.S. 1167 (1997).  Not all communications between an attorney and client are privileged.

3    Information such as the identity of the client, the amount of the fee, the identification of the by case file

4    name, the general purpose of the work performed, and whether an attorney coached a client in his

5    testimony is not privileged.  *See, e.g. United State v. Carrillo*, 16 F.3d 1046, 1050 (9th Cir. 1994).

6    Similarly, when an attorney is merely communicating information, the communications between the

7    attorney and the client are not privileged.  *United States v. Gray*, 876 F.2d 1411 (9th Cir. 1989).

8         The court rejects the arguments asserted by counsel for the Trustee that it was incumbent on

9    counsel for Rio to seek permission from counsel for Myriad to ask Mr. Leahy about non-privileged

10   factual matters about the Grein litigation.  In 2000, Rule 30(c)(2) was amended to apply to an

11   instruction not to answer or objection by any person, not just a party.  The Advisory Committee Notes

12   indicate that the amendment was not intended to invite interjections by nonparties.  Rather, the

13   amendment was intended to clarify that the rule applies to what nonparties do in a deposition.  "The

14   amendment is not intended to confer new authority on nonparties to instruct witnesses to refuse to

15   answer deposition questions.  The amendment makes it clear that, whatever the legitimacy of giving

16   such instructions, the nonparty is subject to the same limitations as parties."  Advisory Committee Note,

17   192 F.R.D. at 395.  Mr. Leahy testified that Myriad's counsel do not represent him in the Grein

18   litigation.  Counsel for Myriad is not entitled to attend or participate in a deposition in this case in

19   which counsel for Rio is merely attempting to discover facts about the pending Grein litigation.

20        During Mr. Leahy's deposition, and in the moving and responsive papers briefing this motion,

21   each side claims it was the responsibility of the other to apply to the court for relief.  Counsel for Rio

22   suggested counsel for the Trustee should move to terminate the deposition to seek a protective order

23   when counsel for the Trustee instructed Mr. Leahy not to answer questions.  Counsel for the Trustee

24   claimed it was Rio's responsibility to contact the court.

25         The court agrees with the authors of a well-respected federal procedure treatise that there is "a

26   substantial preference for requiring that deponents apply to the court for protection rather than simply

27   refusing to answer questions."  8A Wright, Miller and Marcus, *Federal Practice and Procedure*, 3d Ed.

28   Civil § 2113, p. 589.  The court also agrees with the authors that because Rule 37(a) is expressly

designed to permit a motion to compel a deponent who appears but refuses to answer questions, it

would be "unduly draconian" to find that a failure to file a motion under Rule 30(d) precludes

consideration of the matter on the merits. *Id.* As the authors point out, there are many occasions in

which a party taking a deposition may ask a question a deponent or counsel consider improper, but will

be unable to show is asked in bad faith, or to annoy, embarrass or harass the witness. *Id.* The courts

should apply a more practical and realistic approach evaluating each motion on a case-by-case basis.

The phenomenon of the "vanishing trial" has been widely reported. Fewer and fewer civil cases are

tried. As a result, depositions are "the factual background where the vast majority of litigation actually

takes place." *Hall v. Clifton Precision*, 150 F.R.D. 525, 531 (E.D. Pa. 1993). The court will exercise

its supervisory role over discovery consistent with the direction of Rule 1 that the Federal Rules of Civil

Procedure should be applied "to secure the just, speedy and inexpensive determination of every action."

Fed.R.Civ.P. Rule 1. The court will therefore decide this dispute on its merits.

The magistrate judges in this district routinely make themselves available for emergency dispute

resolution conferences. For more than ten years, this court has encouraged counsel to contact chambers

if a discovery dispute arises during a deposition to avoid expensive and time consuming motion

practice. However, hearings, settlement conferences and other duties may prevent me from being

available, or immediately available, to hear these disputes. Generally, the most reasonable and least

expensive alternative when the court is unavailable for an emergency dispute resolution conference is

for the parties to proceed with as much of the deposition as possible, and to attempt to resolve the

matter informally without the court's intervention. Failing that, Rule 37(a) permits a motion to compel

and Rule 30(d)(3) permits a party or deponent to terminate and seek a protective order. Both sides had

the ability to request an emergency dispute resolution conference with the court. Neither did.

## CONCLUSION

Counsel for the Trustee inappropriately instructed Mr. Leahy to refuse to answer non-privileged

questions about the Grein litigation. The instructions were not necessary to preserve a privilege, to

enforce a limitation ordered by the court, or to protect Mr. Leahy from an examination conducted in bad

faith or in a manner to unreasonably annoy, embarrass or oppress Mr. Leahy or a party. The court will

therefore grant Rio's motion to compel Mr. Leahy to appear and answer non-privileged questions about

1   the Grein litigation.  Mr. Leahy may certainly confer with counsel for Myriad in advance of the

2   deposition.  However, counsel for Myriad is not entitled to be present at the deposition where, as here,

3   Myriad's counsel does not represent Mr Leahy and the questions asked of Mr Leahy about the Grein

4   litigation have not attempted to elicit privileged communications.  Mr Leahy may not decline to answer

5   questions about the facts of that case or his own opinions about the Grein case that are related to

6   opinions he has offered in this case.  The facts of the Grein case are not privileged, even if Leahy

7   learned those facts from counsel for Myriad.  *Upjohn*, 449 U.S. at 395.  Counsel for Rio may question

8   Mr. Leahy to ascertain facts about the Grein case, relevant to his own opinions in this case, even if the

9   facts were disclosed to counsel for Myriad in a communication protected by the attorney-client

10  privilege.  *Id*.

11          As there is currently a motion to exclude Mr. Leahy's opinion testimony under submission to

12  the district judge, the court agrees with counsel for the Trustee that a continued deposition should only

13  be allowed if the district judge concludes he should be permitted to testify.  Additionally, because Rio

14  has had the opportunity to fully examine Mr. Leahy on all other aspects of his expert report, opinions

15  and qualifications, the continued deposition will be limited to 30 minutes, excluding the time taken for

16  objections and statements of counsel, and shall be taken telephonically.

17          Finally, Rule 37(a)(5) mandates that the court require a party or deponent whose conduct

18  necessitated a motion to compel to pay the movant's reasonable expenses in making the motion,

19  including attorneys fees unless: (1) the motion was filed without a good faith effort to resolve the

20  dispute without court action; (2) the party's objection was substantially justified; or (3) other

21  circumstances make an award of expenses unjust.

22          The Trustee does not claim that the motion was filed without a good faith effort to resolve this

23  matter, and the motion adequately outlines the efforts made both during and after the deposition to

24  resolve this dispute without court intervention.  The court finds that the Trustee's instructions not to

25  answer were not substantially justified because the Trustee did not comply with the requirements of

26  Rule 26(b)(5)(A) or permit opposing counsel to ask reasonably tailored foundational questions to

27  explore the applicability of the attorney-client privilege.  Moreover, as indicated, counsel for Rio

28  expressly disclaimed any interest in asking the deponent questions about his confidential

communications with counsel for Myriad about the Grein litigation.  Finally, nothing in the record supports a finding that an award of expenses would be unjust.  Accordingly, the court will award Rio reasonable costs and attorneys fees incurred for the necessity of filing this motion.  The court will also require counsel for the Trustee to pay reasonable costs for the second session of Mr. Leahy's deposition if the district judge determines his testimony should be allowed at all.

For the reasons stated,

**IT IS ORDERED** that:

1.    Rio's Motion to Compel (Dkt. #200) is **GRANTED** to the extent that Rio may telephonically depose Mr. Leahy for up to 30 minutes in the event the district judge permits Mr. Leahy to testify.  Counsel shall arrange for a telephonic deposition of Mr. Leahy, not to exceed 30 minutes, excluding arguments, objections and colloquy of counsel within 14 days of decision of the pending *Daubert* motion to exclude Leahy's testimony.

2.    Counsel for Rio may examine Mr. Leahy on a line of questioning about non-privileged facts and opinions about the Grein litigation which Mr. Leahy was instructed not to answer, but may not reopen the deposition for any other purpose.

3.    Rio is awarded reasonable costs and attorneys fees incurred for the necessity of filing this motion.

   a.    Counsel for Rio shall, no later than 14 days from entry of this order, serve and file a memorandum, supported by the affidavit of counsel, establishing the amount of attorneys' fees and costs incurred in bringing its motion.  The memorandum shall provide a reasonable itemization and description of the work performed, identify the attorney(s) or other staff member(s) performing the work, the attorney(s) or staff member(s) customary fee for such work, and the experience, reputation and ability of the attorney performing the work.  The attorney's affidavit shall authenticate the information contained in the memorandum, provide a statement that the bill has been reviewed and edited, and a statement that the fees and costs charged are reasonable.

14

b.     Counsel for Plaintiff shall have 14 days from service of the memorandum of costs and attorneys' fees in which to file a responsive memorandum addressing the reasonableness of the costs and fees sought, and any equitable considerations deemed appropriate for the court to consider in determining the amount of costs and fees which should be awarded.

Dated this 2nd day of December, 2011.

Peggy A. Leen
United States Magistrate Judge

15