UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

In Re:

NATIONAL CONSUMER MORTGAGE, LLC,

        Debtor.

_____

JOHN P. BRINCKO,

        Plaintiff,

 v.

RIO PROPERTIES, INC.,

        Defendant.

_____

2:10-CV-00930-PMP-PAL

ORDER

        Presently before the Court is Plaintiff John P. Brincko's ("Trustee") Motion in Limine for an Order Precluding Testimony as to Whether Debtor's Funds Were Transferred to the Rio (Doc. #271), filed on October 4, 2013.  Defendant Rio Properties, Inc. ("Rio") filed an Opposition on October 21, 2013 (Doc. #288).  The Court held a hearing on this Motion on November 21, 2013.  (Mins. of Proceedings (Doc. #328).)

        In his Motion, the Trustee seeks to exclude any evidence suggesting the cashier's checks purchased by Salvatore "Sam" Favata ("Favata") using Debtor National Consumer Mortgage's ("NCM") funds were not transferred to Rio.  At the hearing, the Court inquired whether the parties wished to prepare additional briefing given that this Motion and Rio's Opposition raise issues that should have been raised at summary judgment.  Counsel for the parties represented that the issues adequately were covered by the Trustee's Motion and Rio's Opposition, their respective Trial Briefs (Doc. ## 309, 312), and their proposed Jury Instructions (Doc. ## 308, 316), and that no further briefing was necessary.  The Court

therefore will consider the arguments raised in the Trustee's Motion and Rio's Opposition, the Trial Briefs, and the proposed Jury Instructions in resolving the issues identified in this Order.

**I. BACKGROUND**

The parties are familiar with the facts of this case, and the Court will not repeat them here except where necessary.  The parties agree Favata obtained NCM company checks made payable to himself or to cash for over $10 million, used those funds to purchase sixty-six cashier's checks made payable to himself from three banks, deposited those cashier's checks in his front money account at Rio, and then used the funds to place wagers in Rio's sports book.  Through his actual and constructive intent fraudulent transfer claims, the Trustee seeks to recover from Rio the amount reflected by the cashier's checks for NCM's bankruptcy estate.

The bankruptcy court previously held, and the parties do not dispute, that NCM's funds were transferred to Favata when he obtained NCM company checks made payable to himself or to cash, thereby making Favata the initial transferee of NCM's funds.  (See Pl. John P. Brincko's Mot. in Limine for an Order Precluding Testimony as to Whether Debtor's Funds Were Transferred to the Rio (Doc. #271), Ex. A at 8 (stating "the initial transferee is almost certainly Favata since . . . he is also the payee of the checks"); Def. Rio Properties, Inc.'s Opp'n to Pl. John P. Brincko's Mot. in Limine for an Order Precluding Testimony as to Whether Debtor's Funds Were Transferred to Rio (Doc. #288), Ex. 1 at Ex. A at 2 (holding that Rio is not the initial transferee of NCM's funds).)  The parties dispute, however, whether Rio was a subsequent transferee of NCM's funds under 11 U.S.C. § 550(a)(2).  Specifically, the parties dispute whether the funds represented by the cashier's checks belonged to the banks that issued the cashier's checks or remained NCM's property. The parties further dispute whether the deposit of the cashier's checks in Favata's front money account rendered Rio a subsequent transferee or whether Rio was a mere conduit

2

until some later point in time, such as when Favata signed markers to withdraw funds from his front money account or when he wagered and lost NCM's funds.

According to the Trustee, in ruling on Rio's motion to dismiss, the bankruptcy court held as a matter of law that the banks that issued the cashier's checks were conduits, not transferees, and therefore the funds represented by the cashier's checks were NCM's funds. The Trustee also contends the deposit of the cashier's checks in Favata's front money account at Rio was a transfer of NCM's funds as a matter of law because Rio was able to exercise dominion over the funds. Specifically, the Trustee argues Rio had dominion over the funds because most of the cashier's checks were deposited in Rio's general operating account as opposed to a segregated front money account for Favata, and Rio was free to use the funds as it would any other funds in its bank account. The Trustee alternatively argues the transfer to Rio occurred at the latest when Favata signed markers, which resulted in funds being released from his front money account to Rio.

Rio contends that in ruling on the motion to dismiss, the bankruptcy court ruled only on the sufficiency of the Trustee's allegations and did not rule the cashier's checks conveyed NCM's funds as a matter of law. According to Rio, the cashier's checks were drawn on accounts owned by the issuing banks, not NCM's accounts, and therefore there is an issue of fact as to whether Rio received NCM's funds when it received the cashier's checks. Rio argues this evidence was not considered by the bankruptcy court at the motion to dismiss stage. As for whether Rio was a subsequent transferee or a conduit, Rio contends that under applicable Nevada gaming regulations, casinos do not exercise dominion over funds deposited in a customer's front money account. Rio therefore argues it did not become a subsequent transferee when Favata deposited the cashier's checks in his front money account as a matter of law. Rio contends that until Favata wagered and lost funds traceable to NCM, Rio did not have dominion over the funds and was a conduit. Finally, Rio argues that because Favata departed Rio with approximately $2.5 million in winnings

3

that had been on deposit in his front money account, it was Favata, and not Rio, that had dominion over those funds.

## II. ANALYSIS

Sections 544 and 548 of the Bankruptcy Code allow a bankruptcy trustee to avoid a fraudulent transfer under either federal law or state law. 11 U.S.C. §§ 544(b)(1), 548(a)(1)(A), (B). A "transfer" includes "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with . . . property; or . . . an interest in property." Id. § 101(54)(D). Upon avoiding a fraudulent transfer under either section 544 or 548, a trustee may recover the transferred property or the value thereof from the initial transferee or from any subsequent transferees. Id. § 550(a). The Bankruptcy Code does not define "transferee," however, the Ninth Circuit adopted the "dominion test" for determining whether a party is a transferee under § 550(a).

Under the dominion test, "a transferee is one who, at a minimum, has 'dominion over the money or other asset, the right to put the money to one's own purposes.'" In re Cohen, 300 F.3d 1097, 1102 (9th Cir. 2002) (quoting Bonded Fin. Servs., Inc. v. European Am. Bank, 838 F.2d 890, 893 (7th Cir. 1988)). "The inquiry focuses on whether an entity had legal authority over the money and the right to use the money however it wished." In re Incomnet, Inc., 463 F.3d 1064, 1070 (9th Cir. 2006).

Distinct from a transferee is a "mere conduit," which is an entity that holds the property but lacks the ability to use the property as it sees fit. Bonded, 838 F.2d at 891-94 (holding that a bank was a conduit of a client's deposited funds until the client instructed the bank to debit his account to reduce his outstanding loan balance owed to the bank with funds in his account); In re Cohen, 300 F.3d at 1102 (stating that "mere possession" does not satisfy the dominion test). The conduit theory avoids the harsh practical and financial consequences that would befall financial intermediaries if "anyone who touches the money," including possessors, holders, and agents, were treated as transferees for § 550(a)

4

purposes. Bonded, 838 F.2d at 893-94. Under the dominion test, banks that issue cashier's checks "as a means of transferring the purchaser's cash to the check's payee" are conduits, not transferees. In re Lee, 179 B.R. 149, 159 (B.A.P. 9th Cir. 1995); see also In re M. Blackburn Mitchell Inc., 164 B.R. 117, 124 (Bankr. N.D. Cal. 1994) (holding that under the dominion test, a bank that received a check from a bankruptcy debtor and then in turn issued a cashier's check payable to a third party is a financial intermediary, not a transferee, because the bank did not receive the funds for its own account and the only benefit it may have received was a nominal handling fee).

### A. Issuing Banks

Here, the parties do not dispute that the banks' involvement in the transactions at issue was to receive NCM checks payable to Favata or to cash and, in exchange, to issue cashier's checks payable to Favata. Although Rio submits evidence indicating that the cashier's checks were drawn on the banks' accounts, Rio does not point to any evidence in the record indicating that the banks received a benefit from the transactions or that the banks had the right to put the funds to their own use. Given that the banks acted as financial intermediaries, or conduits, without dominion over the funds represented by the cashier's checks, the banks are not transferees of NCM's funds. The Court therefore finds that the funds transferred via the cashier's checks were NCM's funds as a matter of law.[1] The Court therefore will grant the Trustee's Motion to the extent that Rio cannot present evidence or argument at trial that the cashier's checks were not NCM's funds.

---

[1] In its Order on Rio's motion to dismiss, the bankruptcy court likewise held as a matter of law that "a transfer of a debtor's funds to purchase a cashier's check, which check then in turn is used for a further transfer, does not cut the link in the chain of transfers for avoidance analysis purposes." (Pl. John P. Brincko's Mot. in Limine for an Order Precluding Testimony as to Whether Debtor's Funds Were Transferred to the Rio (Doc. #271), Ex. A at 9.) In finding that "a cashier's check is merely a means of transferring debtor's fund through a conduit," the bankruptcy court rejected Rio's argument that the funds it received via the cashier's checks were either the issuing banks or Favata's funds. (Id.)

5

### B. Rio

As for whether Rio was a subsequent transferee or a conduit of NCM's funds at the time the cashier's checks were deposited into Favata's front money account, Rio argues it was a conduit because casinos do not exert dominion over funds deposited in a customer's front money account. In support of this argument, Rio cites various Nevada gaming regulations related to sports book wagering accounts. See Nev. Gaming Regs. §§ 22.010(21) (defining a sports book wagering account as an electronic ledger tracking patrons' deposits, withdrawals, amounts wagered, and amounts paid on wagers); 22.160(1) (listing the various ways in which wagering account deposits may be made, including cash deposits, personal checks, cashier's checks, wire transfers, and transfers from front money accounts); 22.160(3) (stating patrons may debit their sports book wagering accounts by making wagers, paying for service or other transaction-related charges, purchasing merchandise or services, or withdrawing funds); 22.040(6)(a) (requiring casinos to keep a reserve "established and held in trust for the benefit and protection of patrons to the extent the book holds money for their account, has accepted wagers from them on contingencies whose outcomes have not been determined, or owes them on winning wagers"). According to Rio, as with sports book wagering accounts, casinos lack dominion over the funds in a patron's front money account, because casinos merely hold the money on deposit for the patron's wagering activities. Thus, the Rio argues the patron at all times retains dominion over the funds in his or her sports book wagering account or front money account.

The Trustee does not respond to Rio's arguments regarding the Nevada gaming regulations or otherwise dispute that these regulations apply to Rio or to the front money accounts at issue in this case. Instead, the Trustee argues Rio had dominion over the funds because most of the cashier's checks were deposited in Rio's general operating account, and Rio was free to use the funds as it would any other funds in its bank account. The Trustee does not point to any evidence in the record, however, indicating the funds represented by

6

the cashier's checks were not held in trust by Rio, that Rio received a benefit from the funds, or that Rio had the right to put the funds to its own use while the funds were on deposit in Favata's front money account. Nor does the Trustee explain why its arguments that the issuing banks were conduits would not also apply to Rio. Just as the issuing banks did not have discretion to put the funds represented by the NCM company checks to their own use, Rio did not have the discretion to put the funds represented by the cashier's checks to its own use. The Court therefore finds Rio was a conduit of NCM's funds at the time the cashier's checks were on deposit in Favata's front money account.

Given that Rio was a conduit when the cashier's checks were on deposit in Favata's front money account, exactly what point in time Rio became a subsequent transferee is still an open question. The Trustee argues Rio became a subsequent transferee, at the latest, when Favata signed markers which resulted in funds being released from Favata's front money account to Rio. Rio argues that it became a subsequent transferee, if at all, when Favata wagered and lost. A related issue disputed by the parties is the amount of NCM's funds Rio received when it became a subsequent transferee. The Trustee seeks to recover the face value of the cashier's checks, while Rio argues the Trustee only may recover the amount of funds traceable to NCM that Favata actually lost, not the face value of the cashier's checks. The parties failed to raise these issues at summary judgment, failed to provide the Court with sufficient legal authority and evidence to decide these issues, and represented to the Court at the hearing on November 21, 2013, that they did not wish to submit additional briefing. Thus, the jury will decide at trial the issues of exactly what point in time after the cashier's checks were deposited in the front money account that Rio became a subsequent transferee and the amount of NCM's funds Rio received.

///
///
///

7

### III. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff John P. Brincko's Motion in Limine for an Order Precluding Testimony as to Whether Debtor's Funds Were Transferred to the Rio (Doc. #271) is hereby GRANTED in part and DENIED in part. The Motion is granted to the extent Rio Properties, Inc. cannot present evidence or argument at trial that the cashier's checks were not NCM's funds. The Motion is denied in all other respects.

DATED: December 20, 2013

_____
PHILIP M. PRO
United States District Judge