1
2
3
4
5

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

6
7
8
9
10
11
12
13
14
15

In Re:                                                )
                                                      )
NATIONAL CONSUMER MORTGAGE,     )        2:10-CV-00930-PMP-PAL
LLC,                                               )
                                                      )
                     Debtor.                     )
                                                      )
_____)        <u>ORDER</u>
                                                      )
JOHN P. BRINCKO,                          )
                                                      )
                     Plaintiff,                   )
                                                      )
 v.                                                  )
                                                      )
RIO PROPERTIES, INC.,                    )
                                                      )
                     Defendant.               )
_____)

16   Presently before the Court is Defendant Rio Properties, Inc.'s Motion in Support

17   of Proposed Judgment (Doc. #382), filed on February 11, 2014.  Plaintiff John P. Brincko

18   filed an Opposition (Doc. #386) on March 3, 2014.  Defendant Rio Properties, Inc. filed a

19   Reply (Doc. #387) on March 10, 2014.

20   Also before the Court is Plaintiff John P. Brincko's Motion for (I) Entry of

21   Judgment; (II) Prejudgment Interest; and (III) Post-Judgment Interest (Doc. #383), filed on

22   February 13, 2014.  Defendant Rio Properties, Inc. filed an Opposition (Doc. #385) on

23   March 3, 2014.  Plaintiff John P. Brincko filed a Reply (Doc. #388) on March 10, 2014.

24   **I.  BACKGROUND**

25   The parties are familiar with the facts of this case and the Court will not repeat

26   them here except where necessary.  On February 3, 2014, the jury returned a verdict in this

fraudulent transfer action resulting in a net award of $1.48 million in favor of Plaintiff John P. Brincko ("Trustee") and against Defendant Rio Properties, Inc. ("Rio").  (Jury Verdict (Doc. #373).)  On February 4, 2014, the Court ordered the Trustee and Rio to meet and confer and to file a joint proposed judgment reflecting the jury's verdict.  (Min. Order (Doc. #370).)  Rather than filing a joint proposed judgment, the parties separately filed motions for judgment and competing proposed judgments.

In its Motion, Rio contends the jury's $1.48 million net award to the Trustee should be reduced by $750,000, the amount for which the Trustee settled his claims against Bank of America related to the same fraudulent transfers at issue in this case.  According to Rio, this offset would avoid allowing the Trustee a double recovery.  Rio also asserts the net award should be reduced by the $7,429.45 in discovery-related sanctions the Court awarded to Rio against the Trustee during the course of this litigation.  Finally, Rio asserts it is the prevailing party.  Rio provides a proposed judgment consistent with its arguments.

In his Opposition, the Trustee does not object to the offset of the sanctions, subject to the Trustee preserving his right to appeal any issues related to the issuance of the sanctions.  The Trustee contends the Bank of America settlement amount should not be offset from the award against Rio because the Trustee will not make a double recovery given that the estate is owed over $10 million dollars in fraudulent transfers, but the combined settlement and jury verdict amount to less than $3 million.  The Trustee also contends that he, rather than Rio, is the prevailing party in this action.

The Trustee also separately moves for entry of judgment, and for an award of pre- and post-judgment interest.  The Trustee contends he is the prevailing party in this action, and he is entitled to pre-judgment interest under both California and federal law from the date of the fraudulent transfers which the jury found Rio must return to the estate. The Trustee provides a proposed judgment consistent with his arguments.

///

Rio concedes the Trustee will be entitled to post-judgment interest.  However, Rio repeats its arguments from its own motion that any award to the Trustee should be reduced by the sanctions and by the Bank of America settlement, and that Rio is the prevailing party.  Rio also argues the Trustee is not entitled to pre-judgment interest under California law because the Trustee did not recover "damages" to which the California pre-judgment interest statute would apply.  Rio also argues the Trustee is not entitled to pre-judgment interest under California law because the amount Rio owed was uncertain until the jury's verdict.  As to pre-judgment interest under federal law, Rio argues the Court should exercise its discretion and deny a pre-judgment interest award because the case involved close and complex issues, Rio litigated in good faith, and the Trustee unnecessarily delayed the litigation.  Rio further contends that if the Court intends to award pre-judgment interest, the interest should not run from the date of the transfers, but from other proposed dates given the Trustee's conduct of the litigation.

## II.  UNDISPUTED ISSUES

The parties agree the Trustee's net $1.48 million verdict should be reduced by the Court's prior sanctions awards against the Trustee (Orders (Doc. #236, #264)) in the total amount of $7,429.45.  The parties also agree that any pre-judgment interest the Court awards should be simple interest.  Finally, the parties agree that the Trustee is entitled to post-judgment interest under 28 U.S.C. § 1961(a).

## III.  PREVAILING PARTY

The Trustee and Rio each contend they are the prevailing party in this action for purposes of determining which party ought to be awarded costs.  Rio argues it is the prevailing party because the jury found Rio acted in good faith with respect to approximately ninety percent of the fraudulent transfers, and Rio's good faith defense was the main issue in this case.  Alternatively, Rio argues the Court should apportion costs for a mixed verdict.  The Trustee argues he is the prevailing party because he obtained a verdict

in his favor by which he can compel Rio to pay $1.48 million Rio otherwise would not pay.

Pursuant to Federal Rule of Civil Procedure 54(d)(1), the Court should award costs to the "prevailing party" unless a federal statute, the Federal Rules, or a court order provides otherwise. Under Rule 54, there is a presumption in favor of awarding costs to the prevailing party unless the court exercises its discretion to refuse to award costs for specified reasons. Ass'n of Mexican-Am. Educators v. California, 231 F.3d 572, 591 (9th Cir. 2000) (en banc). It is within the court's discretion to require each party to bear its own costs in the event of a mixed judgment. Amarel v. Connell, 102 F.3d 1494, 1523 (9th Cir. 1996). There are many reasons a district court may decide to deny costs, including (1) the losing party has limited financial resources, (2) the prevailing party engaged in misconduct, (3) imposing costs would have a chilling effect on future civil rights litigants, (4) "the issues in the case were close and difficult," (5) "the prevailing party's recovery was nominal or partial," (6) "the losing party litigated in good faith," and (7) "the case presented a landmark issue of national importance." Champion Produce, Inc. v. Ruby Robinson Co., 342 F.3d 1016, 1022 (9th Cir. 2003).

A "party in whose favor judgment is rendered is generally the prevailing party for purposes of awarding costs under Rule 54(d)." San Diego Police Officers' Ass'n v. San Diego City Emps.' Ret. Sys., 568 F.3d 725, 741 (9th Cir. 2009) (quotation omitted). A party need not prevail on all of its claims to be found the prevailing party, and prevailing party status "does not turn on the magnitude of the relief obtained." Farrar v. Hobby, 506 U.S. 103, 114 (1992); San Diego Police Officers' Ass'n, 568 F.3d at 741. Generally, a plaintiff who wins even nominal damages is considered the prevailing party. See, e.g., Farrar, 506 U.S. at 113 ("A judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay."). However, a "technical victory may be so insignificant . . . as to be insufficient to support prevailing

4

party status." <u>Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.</u>, 489 U.S. 782, 792 (1989).

Here, the Trustee is the prevailing party.  The Trustee prevailed on several issues at summary judgment, including that Salvatore Favata ("Favata") acted with the intent to defraud, that the Trustee was entitled to the Ponzi scheme presumption of insolvency, that Favata acted with actual authority in controlling the Debtor National Consumer Mortgage, LLC's ("NCM") affairs, and that Favata acted within the course and scope of his authority at NCM when he transferred funds from NCM to himself.  (Order (Doc. #247) at 20-24.) Additionally, the Trustee obtained a jury verdict declaring that the Trustee had proven by a preponderance of the evidence that Favata was the sole relevant actor at NCM, that Rio was a subsequent transferee of NCM's funds, and that Rio received a total of $10,342,008.21[1] of NCM's fraudulently transferred funds.  The jury also found that Rio met its burden of showing by a preponderance of the evidence that Rio received $8,862,008.21 of those funds in good faith.  The net result is a verdict in favor of the Trustee in the amount of $1.48 million.

Although the Trustee did not recover the approximately $10 million he sought, a plaintiff need not prevail on all of his claims to be deemed the prevailing party.  Nor is the magnitude of the difference between the amount requested and the amount obtained the relevant inquiry.  Rather, the Trustee has obtained a verdict directing Rio to pay the Trustee $1.48 million Rio otherwise would not pay.  A $1.48 million verdict is not a technical victory.

///

---

[1] The total amount in controversy between the parties differs as between the Trustee's claims under 11 U.S.C. § 548 and § 544 due to the different statutes of limitations under the two sections. However, the jury awarded the same net amount to the Trustee for all of his claims.  The Court will use the higher amount in controversy under § 544 because that is the total amount the parties litigated in this action.

Rio characterizes its good faith affirmative defense as the main issue in this case, thus supporting the conclusion that Rio is the prevailing party because it succeeded on the defense for most of the transfers.  However, Rio vigorously litigated the issues of whether NCM was insolvent, whether NCM acted with the requisite fraudulent intent, whether Rio ever became a subsequent transferee of NCM's funds, and, if so, what amount of NCM's funds Rio received.  (See, e.g., Tr. (Doc. #154) at 8-9; Mot. Summ. J. (Doc. #183); Omnibus (1) Reply in Support of Rio Properties, Inc.'s Mots. Summ. J. & (2) Opp'n to Trustee's Countermot. Summ. J. (Doc. #226); Jt. Pretrial Order at 3-4, 6-7 (Doc. #252); Def. Rio Properties, Inc.'s Opp'n to Pl.'s Mot. in Limine for an Order Precluding Testimony as to Whether Debtor's Funds Were Transferred to Rio (Doc. #288); Trial Br. (Doc. #312) at 10-14; Proposed Jury Instr. (Doc. #316); Proposed Jury Instr. (Doc. #340).)  The Trustee ultimately prevailed on each of these issues, and obtained a net judgment for a substantial sum of money.  The Trustee therefore is the prevailing party in this action.  This finding, however, does not end the Court's consideration of costs to be awarded to the prevailing party.

Although the Trustee is the prevailing party, the Court, in its discretion, concludes there is good cause to limit Trustee's recovery of costs to fifteen percent (15%).  The issues in this case were close and complex, and Rio litigated in good faith.  Further, while the Trustee is the prevailing party in the overall action, Rio's good faith affirmative defense was largely successful and the Trustee recovered only about fifteen percent of the amount he sought.[2]  Accordingly, the Court will limit the Trustee to fifteen percent of his

---

[2]  The Champion Produce Court cautioned that these factors were appropriate considerations in denying a cost award in a contract action, but did not address whether these factors would support denial of costs in a tort action.  342 F.3d at 1023.  Champion Produce approved these factors in a contract case because "damages are often more readily calculable" in a contract case as opposed to tort cases.  Id.  Here, the Trustee's potential recovery on his fraudulent transfer claims was readily calculable by reference to the face value of the cashier's checks Favata deposited at Rio.

costs.

**IV.  DOUBLE RECOVERY**

Rio argues the Trustee's net award of $1.48 million must be reduced by the $750,000 the Trustee received in a settlement with Bank of America.  Rio contends that because the Trustee's claims against Bank of America involved the same cashier's checks at issue in this case, allowing the Trustee to recover the full verdict against Rio as well as the full settlement proceeds from Bank of America would result in a double recovery.  The Trustee responds that the jury found NCM's estate was damaged in the amount of over $10 million in fraudulent transfers, and the Trustee recovered only $2.23 million.  The Trustee thus contends there is no double recovery.

Pursuant to 11 U.S.C. § 550(d), a bankruptcy "trustee is entitled to only a single satisfaction" of an avoided transfer under § 544 or § 548.  To prevent a plaintiff from recovering more than once for the same wrong, a court may offset a verdict against one defendant by a settlement the plaintiff obtained with another defendant.  See Portugues-Santana v. Rekomdiv Int'l, 657 F.3d 56, 63-64 (1st Cir. 2011); Vesey v. United States, 626 F.2d 627, 633 (9th Cir. 1980) ("Since there was but a single wrong the death of Howard Vesey caused by the fatal crash, the partial satisfaction obtained from [a settling joint tortfeasor] must be applied to reduce the total damages."); Cal. Civ. P. Code § 877.

Here, the Trustee sued Bank of America and Rio for the same wrong consisting of the fraudulent transfer of funds represented by fifty-nine cashier's checks issued by Bank of America, and deposited at Rio, in the aggregate amount of $9.67 million.[3]  (Def. Rio Properties, Inc.'s Mot. in Support of Proposed J. (Doc. #382), Exs. A-3, A-4, A-5.)  The Trustee settled his claims against Bank of America for $750,000.  (Id., Exs. A-1, A-2.)

---

[3] Several other cashier's checks were issued to Favata by other banks, which Favata deposited at Rio, resulting in the total amount the Trustee sought from Rio of $10,342,008.21.

However, Rio is not entitled to an offset for the $750,000 settlement because the Trustee will not receive a double recovery.  The jury found that all of the Bank of America checks were transferred to Rio, resulting in a $9.67 million loss for the bankruptcy estate.  The Trustee has recovered $750,000 from Bank of America and $1.48 million from Rio, totaling $2.23 million.  The Trustee thus has not received full satisfaction of the estate's loss for all of the Bank of America transfers, much less a double recovery.  The Bank of America settlement did not specify that all or any portion of the settlement funds were allocated to the seven checks comprising the jury's verdict against Rio,[4] and there is no other evidence that the Bank of America settlement was directed at those specific transfers as opposed to the fifty-two other cashier's checks issued by Bank of America amounting to over $8 million.

In its Reply, Rio argues that the Trustee is entitled to a single satisfaction per transfer, and that the Trustee erroneously relies on his global losses to argue he is not receiving a double recovery.  (Def. Rio Properties, Inc.'s Reply to Trustee's Opp'n to Rio's Mot. for Entry of J. (Doc. #387) at 1-3.)  However, Rio then similarly begins with the Trustee's total losses, deducts the amount the jury found Rio received in good faith, deducts the $750,000 Bank of America settlement, and deducts the discovery sanctions, to arrive at a proposed award of $722,570.55.  (Id. at 5-6.)  Rio thereby engages in the same global

---

[4]  The parties agree that the jury found Rio acted in good faith with respect to all but the last seven checks deposited by Favata at Rio, all of which were issued by Bank of America.  (Def. Rio Properties, Inc.'s Mot. in Support of Proposed J. (Doc. #382) at 2; Pl.'s Mot. for (I) Entry of J.; (II) Prejudgment Interest; & (III) Post-J. Interest (Doc. #383) at 8-9 & n.7; Trustee's Reply in Further Support of His Mot. for (I) Entry of J.; (II) Prejudgment Interest; and (III) Post-J. Interest (Doc. #388) at 12.)  The parties reach this conclusion because the jury awarded $1.48 million, which corresponds with the total amount of the last seven checks.  The verdict form did not require the jury to indicate which transfers it found Rio received in good faith.  Instead, the jury awarded a total monetary amount.  Nevertheless, the parties' assumption is reasonable because the jury was instructed to evaluate each transfer independently.  Given the facts of the case, the most reasonable interpretation of the jury's verdict is that the jury found Rio received funds in good faith up to a certain point in time, but the jury found Rio thereafter failed to meet its burden of proving it was acting in good faith.

analysis, yet does not explain why its calculations are proper when there is no evidentiary basis to attribute the $750,000 to the particular transfers that form the basis of the jury's verdict in the Trustee's favor.

Although Rio primarily relies on Decker v. Tramiel to support its double recovery argument, that case supports the Court's conclusion that no offset is warranted.  In Decker, a good faith transferee of real property was entitled to an offset because the amount the transferee paid for the fraudulently transferred property plus the settlement proceeds from alleged joint tortfeasors related to the same fraudulent transfer exceeded the property's fair market value.  Decker v. Tramiel (In re JTS Corp.), 617 F.3d 1102, 1110, 1118-20 (9th Cir. 2010).  If the bankruptcy estate could retain both the price paid for the property and the settlement proceeds, it would receive more than the fraudulently transferred property was worth, resulting in a recovery greater than a single satisfaction.  Id.  Here, however, the Trustee is not receiving full satisfaction of the fraudulent transfers reflected by the Bank of America cashier's checks, as discussed above.  Further, Rio's good faith defense reduced Rio's liability to the Trustee, but unlike the purchase price paid by the transferee in Decker, Rio's good faith defense did not reduce the amount of the bankruptcy estate's losses nor does it constitute value Rio gave to NCM's bankruptcy estate.  Thus, there is no danger of double recovery and the Court will not allow an offset.

**V.  PRE-JUDGMENT INTEREST**

The Trustee contends that he is entitled to pre-judgment interest on his § 544 claims as calculated under California law, and he is entitled to pre-judgment interest on his § 548 claims as calculated under federal law.  The Trustee also contends pre-judgment interest should run from the date of each of the seven transfers at issue.  Rio responds that California law is inapplicable, and does not allow for pre-judgment interest in any event because the Trustee did not recover "damages" and any damage amount was uncertain.  Rio also argues the Court should deny or reduce pre-judgment interest under federal law

because Rio litigated in good faith, the Trustee delayed the litigation, and any interest should run from a date later than the transfers.

### A.  California Law

For the Trustee's claims under § 544, state law regarding prejudgment interest governs.  In re Acequia, Inc., 34 F.3d 800, 818 & n.4 (9th Cir. 1994) (citing In re Agric. Research & Tech. Grp., Inc., 916 F.2d 528, 541 (9th Cir. 1990)).  California Civil Code § 3287(a) provides that "[a] person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day." Prejudgment interest is designed to "compensate the prevailing party for the loss of money during the period before the judgment is entered."  Tenzera, Inc. v. Osterman, 140 Cal. Rptr. 3d 96, 100 (Cal. Ct. App. 2012).  The Court must award prejudgment interest if "the statutory conditions are satisfied."  Id.

Rio argues the statutory conditions are not satisfied because the Trustee did not recover "damages," rather he recovered fraudulently transferred funds.  Rio also argues any damages recovered were not certain because the parties disputed whether Rio was a transferee, in what amount, and what amount of those transfers Rio received in good faith. Finally, Rio argues interest should run from a date other than the date of the transfers.  The Trustee responds that under the statutory definition and caselaw, he recovered "damages." The Trustee also contends damages were certain because they were capable of calculation from the face of the cashier's checks.  Finally, the Trustee argues prejudgment interest should run from the date of the transfers because the purpose of prejudgment interest is compensatory and the jury found Rio should not have accepted the transfers as of the date of each transfer.

///

///

10

1.   "Damages"

Section 3287(a) allows for prejudgment interest for a plaintiff who recovers "damages."  The California Supreme Court has not addressed whether fraudulently transferred funds recovered under the California Uniform Fraudulent Transfer Act ("CUFTA") constitute "damages" within the meaning of § 3287(a).  "Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it."  Giles v. Gen. Motors Acceptance Corp., 494 F.3d 865, 872 (9th Cir. 2007) (quotation omitted).  "In answering that question, this court looks for 'guidance' to decisions by intermediate appellate courts of the state and by courts in other jurisdictions."  Id. (quotation omitted).

California construes a statute by "ascertain[ing] the Legislature's intent in order to effectuate the law's purpose."  People v. Arias, 195 P.3d 103, 107 (Cal. 2008) (quotation omitted).  Courts begin with the statute's plain language, giving the words their "usual and ordinary meaning."  Id.  The Court interprets the statutory language in the context of the overall statutory scheme.  Id.  A statute's "plain meaning controls the court's interpretation" unless the statute is ambiguous.  Id.  If the statute is ambiguous, the Court may consider "extrinsic aids, including legislative history, the statute's purpose, and public policy."  Id.

Beginning with the statute's plain language, § 3287(a) allows for prejudgment interest for a plaintiff who recovers "damages."  Section 3281[5] defines "damages" as money compensation for a loss suffered due to the unlawful act or omission of another which the injured party may recover from the person at fault.  Section 3281's definition of damages is "intended to represent the plain and ordinary meaning of the word 'damages.'"  AIU Ins.

---

[5]  "Every person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages."  Cal. Civ. Code § 3281; see also id. § 3282 (defining "detriment" as "a loss or harm suffered in person or property").

Co. v. Superior Ct., 799 P.2d 1253, 1267 (Cal. 1990).  To constitute "damages," there must be "compensation, in money, recovered by a party for loss or detriment it has suffered through the acts of another."  Id. (internal quotation marks and footnote omitted). Compensation "encompass[es] any remunerative payment made to an aggrieved party," and "generically includes restitutive and punitive measures."  Id. at 1267 n.11.  Although California recognizes the difference between restitution and other equitable relief versus compensatory damages at law in some contexts,[6] the California Supreme Court has indicated that the ordinary meaning of the term "damages" includes both compensatory damages and restitution.  Id. at 1273-74.

A creditor seeking relief under CUFTA may (1) avoid the transfer; (2) attach or obtain other provisional remedies against the transferred asset or its proceeds; and (3) "[s]ubject to applicable principles of equity and in accordance with applicable rules of civil procedure," seek an injunction, appointment of a receiver, or "[a]ny other relief the circumstances may require."  Cal. Civ. Code. § 3439.07(a).  A creditor who successfully avoids a transfer may obtain a "judgment for the value of the asset transferred, as adjusted under subdivision (c), or the amount necessary to satisfy the creditor's claim, whichever is less."  Id. § 3439.08(b).  Pursuant to subdivision (c), if the judgment is "based upon the value of the asset transferred, the judgment shall be for an amount equal to the value of the asset at the time of the transfer, subject to adjustment as the equities may require."  Id. § 3439.08(c).

CUFTA does not state that a creditor may recover "damages."  Rather, it permits the creditor to recover the specific transferred property or the value thereof, including property consisting of specific monies.  Such a remedy is akin to restitution because it awards the plaintiff "the very thing to which he was entitled," as opposed to compensatory

---

[6] AIU, 799 P.2d at 1274.

damages, which generally are given to the plaintiff "to substitute for a suffered loss." AIU, 799 P.2d at 1274 (quotation and emphasis omitted).  Nevertheless, the AIU Court included restitution as a form of "damages" within the ordinary meaning of that term under California law.  The Court concludes the California Supreme Court likewise would hold that the plain and ordinary meaning of § 3287(a), which incorporates the definition of damages in § 3281, includes the recovery of fraudulently transferred funds.

This conclusion is consistent with § 3287(a)'s purpose "to provide just compensation to the injured party for loss of use of the award during the prejudgment period—in other words, to make the plaintiff whole as of the date of the injury." Lakin v. Watkins Associated Indus., 863 P.2d 179, 191 (Cal. 1993).  In accord with this purpose, California courts consistently have interpreted the statute to apply broadly.  See Tripp v. Swoap, 17 Cal. 3d 671, 681-82 (Cal. 1976), overruled on other grounds by Frink v. Prod, 643 P.2d 476, 484 (Cal. 1982) (holding § 3287 allowed for prejudgment interest in a mandamus action, and stating the statute "provid[es] for prejudgment interest in actions based upon a general underlying monetary obligation"); Levy-Zentner Co. v. S. Pac. Transp. Co., 74 Cal. App. 3d 762, 795-96 (Cal. Ct. App. 1977) (rejecting the argument that § 3287 was limited to certain types of actions, and indicating the key inquiry is "whether the damages were readily ascertainable"); Mente & Co. v. Fresno Compress & Warehouse Co., 298 P. 126, 128 (Cal. Ct. App. 1931) ("It has been said that there is no impropriety in designating as 'damages' the amount of money recovered in any judgment in the light of the language of section 3281 of the Civil Code.").  Although there is limited authority on the topic, some courts applying California law have indicated an award of prejudgment interest in fraudulent transfer actions is proper.  See Wolkowitz v. Beverly (In re Beverly), 2010 Bankr. LEXIS 230, at *8-10 (Bankr. C.D. Cal. Jan. 29, 2010) (unpublished) (awarding prejudgment interest on a fraudulent transfer claim under § 3287); Schwartz v. Furano, No. A117887, 2009 WL 296996, at *7 (Cal. Ct. App. Feb. 9, 2009) (unpublished)

("Prejudgment interest may be awarded under section 3287 in an action to set aside a fraudulent transfer.").

Based on § 3287(a)'s plain language, its remedial purpose, and the limited authority interpreting the statute with respect to fraudulent transfers, the Court concludes that the Trustee has sustained "damages" within § 3287(a)'s meaning. The Trustee is entitled to monetary compensation from Rio for the losses NCM's bankruptcy estate suffered due to actually and constructively fraudulent transfers which the jury found Rio did not receive in good faith. NCM's bankruptcy estate would not be made whole if it could not recover prejudgment interest on the fraudulent transfers.[7] This result is consistent with other courts that have awarded prejudgment interest under § 3287 for fraudulent transfers. The statutory requirement that the Trustee recover "damages" therefore is satisfied.

### 2. Certainty

To be eligible for prejudgment interest under § 3287, any damages must be "certain, or capable of being made certain by calculation." Thus, a plaintiff is entitled to prejudgment interest "where the amount due plaintiff is fixed by the terms of the contract, or is readily ascertainable by reference to well-established market values." Great W. Drywall, Inc. v. Roel Constr. Co., 83 Cal. Rptr. 3d 235, 238 (Cal. Ct. App. 2008) (quotation omitted); see also Lineman v. Schmid, 195 P.2d 408, 412-13 (Cal. 1948). However, the Court should not allow prejudgment interest under § 3287 "where the amount of the damages depends upon a judicial determination based on conflicting evidence." Great W. Drywall, Inc., 83 Cal. Rptr. 3d at 238 (quotation omitted). "Damages are deemed certain or capable of being made certain" under § 3287(a) when the parties do not dispute "the basis of computation of damages if any are recoverable." Leff v. Gunter, 658 P.2d 740, 748 (Cal.

---

[7] This is consistent with 11 U.S.C. § 550's purpose, which is "to restore the estate to the financial condition it would have enjoyed if the transfer had not occurred." In re JTS Corp., 617 F.3d 1102, 1111-12 (9th Cir. 2010) (quotation omitted).

1983) (quotation omitted).  A dispute over the defendant's liability giving rise to the damages does not suffice to make damages uncertain.  Id.; Wisper Corp. v. Cal. Commerce Bank, 57 Cal. Rptr. 2d 141, 147 (Cal. Ct. App. 1996) ("Thus, it is clear that Civil Code section 3287 looks to the certainty of the damages suffered by the plaintiff, rather than to a defendant's ultimate liability, in determining whether prejudgment interest is mandated.").

Here, the Trustee's damages were readily ascertainable by reference to the face amount of the cashier's checks Favata deposited at the Rio.  There was no factual dispute regarding whether Favata obtained the cashier's checks from Bank of America and then deposited them at Rio.  That Rio disputed its liability for negotiating the checks does not render the Trustee's damages uncertain.  The statutory requirement that the amount of the Trustee's damages be certain, or capable of being made certain by calculation, is satisfied.

### 3.  Date

To be eligible for prejudgment interest under § 3287, the plaintiff's right to recover must vest on a particular day, and prejudgment interest runs from that day.  Consequently, "prejudgment interest runs from the date when the damages are of a nature to be certain or capable of being made certain by calculation and when the exact sum due to the plaintiff is made known to the defendant."  Levy-Zentner Co., 74 Cal. App. 3d at 798.  In fraudulent transfer actions, courts may award prejudgment interest running from the date of each transfer, particularly where actual fraud was involved.  See, e.g., Donell v. Kowell, 533 F.3d 762, 772 (9th Cir. 2008); In re Agric. Research & Tech. Grp., 916 F.2d at 541-42.  Alternatively, courts may award prejudgment interest from the date the plaintiff made a demand or filed a complaint, such as where the transferee was not engaged in culpable conduct.  See In re Global Technovations, Inc., 431 B.R. 739, 775-76 (Bankr. E.D. Mich. 2010) (collecting cases); Schwartz, 2009 WL 296996, at *8-9 (awarding prejudgment interest from the date of the complaint where the transferee did not act with culpable intent and did not have notice that the transfers potentially were avoidable until the complaint was

filed).

In this fraudulent transfer action, the Court concludes prejudgment interest should run from the date the Trustee filed the adversary complaint on April 2, 2008.  There is no evidence Rio actually knew of or participated in Favata's fraudulent scheme.  Rio was a subsequent transferee who received the funds through Bank of America cashier's checks, all of which Bank of America honored.  The jury found Rio acted in good faith in accepting slightly more than eight-five percent of the transfers.  Further, the jury did not make an express finding that Rio acted with knowledge or in bad faith with respect to the last seven transfers constituting the $1.48 million awarded to the Trustee.  Rather, the jury found Rio failed to meet its burden of proving it acted in good faith with respect to those final seven transfers.  Because the jury was not asked to find Rio acted in bad faith or with knowledge of the fraudulent nature of the transaction, the jury verdict does not compel the conclusion that Rio knew or should have known the exact sum due the Trustee on the date of each transfer.

Rio knew on the date of the adversary complaint, however, that the Trustee was claiming certain identified fraudulent transfers and the amounts which the Trustee contended Rio received, and which the Trustee sought to recover.  As of that date, the bankruptcy estate's damages were capable of being made certain by calculation and Rio was apprised of the exact sum claimed to be due to the estate.  Prejudgment interest therefore shall run from the date of the adversary complaint, April 2, 2008.  Because there is no contractual rate, interest shall accrue at 7% per annum.  Cal. Const. Art. 15, § 1; Children's Hosp. & Med. Ctr. v. Bonta, 118 Cal. Rptr. 2d 629, 655 (Cal. Ct. App. 2002).

### B.  Federal Law

For the Trustee's claims under § 548, federal law controls.  In re Acequia, Inc., 34 F.3d at 818.  Whether to award prejudgment interest lies within the Court's discretion.  Id.  In exercising its discretion, the Court considers fairness to the parties and the purpose of

prejudgment interest to make the wronged party whole.  Id.  If the Court awards

prejudgment interest, the rate as defined in 28 U.S.C. § 1961 should be awarded, "unless the

district court finds, on substantial evidence, that a different prejudgment interest rate is

appropriate." Blanton v. Anzalone, 813 F.2d 1574, 1575 (9th Cir. 1987).

The Court, in its discretion, will award the Trustee prejudgment interest on his

§ 548 claims running from the date of the adversary complaint.[8]  Considering the equities, a

prejudgment interest award is appropriate to compensate the bankruptcy estate for the time

value of the money fraudulently transferred out of the estate to make the estate whole.  In re

JTS Corp., 617 F.3d 1102, 1111-12 (9th Cir. 2010); 11 U.S.C. § 550.  However, for the

same reasons as discussed above, prejudgment interest shall run from the date of the

adversary complaint, rather than the date of the transfers.

The Court finds no reason to deviate from the rate set forth in 28 U.S.C. § 1961.

Prejudgment interest on the Trustee's § 548 claims therefore will be "at a rate equal to the

weekly average 1-year constant maturity Treasury yield, as published by the Board of

Governors of the Federal Reserve System, for the calendar week preceding the date of" the

adversary complaint.  28 U.S.C. § 1961(a); see also Blanton v. Anzalone, 760 F.2d 989,

992-93 (9th Cir. 1985).

The Court will not reduce the prejudgment interest award based on Rio's

argument that Rio acted in good faith in withholding the funds as demonstrated by Rio's

success on its good faith affirmative defense.  Rio's good faith was a factor in the Court

determining the appropriate date from which interest shall run.  However, a counter

consideration is the purpose of prejudgment interest to make the estate whole.  Prejudgment

interest is not aimed at punishing a defendant who fails to litigate in good faith.  It is aimed

at compensating the injured party for the time value of money.  Donell, 533 F.3d at 772

---

[8]  The Court does not award, and the Trustee does not seek, double interest awards based on California and federal law.  Interest will run at the higher of the two rates.

("[P]rejudgment interest should not be thought of as a windfall in any event; it is simply an ingredient of full compensation that corrects judgments for the time value of money." (quotation omitted)).  The Court will not further reduce the prejudgment award on the basis that Rio withheld the funds in good faith.

The Court also will not reduce the prejudgment award based on the Trustee's litigation conduct.  Rio's argument that the Trustee delayed in bringing suit is moot because the Court has determined the proper date from which interest should run is the date of the adversary complaint.  Further, the Court finds no basis to reduce the award based on the Trustee's request to amend the scheduling order to allow for full summary judgment briefing.  (Notice of Mot. & Mem. of P. & A. in Support of Trustee's Mot. to Amend Sched. Order (Doc. #195) ["Mot. to Am. Sched. Order"].)  The Trustee's request was aimed at streamlining summary judgment briefing after Rio filed two motions for summary judgment and the Trustee intended to file his own countermotions.  (Mot. Summ. J. (Doc. #183); Mot. Summ. J. (Doc. #189); Mot. to Am. Sched. Order.)  At the time the Trustee requested this relief, the deadline to file dispositive motions had not yet expired, and thus the Trustee could have filed a summary judgment motion regardless of whether the Court granted his request to amend the Scheduling Order.  (Sched. Order (Doc. #177).)  The Court granted the Trustee's requested relief.  (Min. Order (Doc. #203).)  Rio thereafter filed three motions to strike the Trustee's experts, and the Trustee filed his Countermotion for Summary Judgment.  (Mot. to Exclude (Doc. #204); Mot. to Exclude (Doc. #205); Mot. to Exclude (Doc. #206); Omnibus Mem. of P. & A. in Opp'n to Def. Rio Properties, Inc.'s Mots. Summ. J. & in Support of the Trustee's Countermot. for Summ. J., for Sanctions, & Dismissing Rio's Good Faith Defense (Doc. #217).)

Although the Court appreciates Rio's frustration with the amount of time it took the Court to resolve the parties' respective motions, the parties filed numerous complex motions with over 7,000 pages of briefing and exhibits, taxing the Court's already

overburdened time and resources during a period of judicial vacancies and rising caseloads. Further, rather than waste time, the Trustee's Countermotion narrowed the issues for trial. (See Order (Doc. #247) (resolving numerous issues in the Trustee's favor).)  The Court therefore will award the Trustee prejudgment interest at the rate as defined in 28 U.S.C. § 1961, running from the date of the adversary complaint, April 2, 2008.

**VI. CONCLUSION**

IT IS THEREFORE ORDERED that Defendant Rio Properties, Inc.'s Motion in Support of Proposed Judgment (Doc. #382) is hereby GRANTED in part and DENIED in part.  The Motion is granted to the extent that the Court will order the proposed form of judgment to offset $7,429.45 in sanctions from the Trustee's net award.  The Motion is denied in all other respects.

IT IS FURTHER ORDERED that Plaintiff John P. Brincko's Motion for (I) Entry of Judgment; (II) Prejudgment Interest; and (III) Post-Judgment Interest (Doc. #383) is hereby GRANTED in part and DENIED in part as set forth more fully in this Order.

IT IS FURTHER ORDERED that on or before May 30, 2014, Plaintiff John P. Brincko shall prepare and file a proposed form of judgment that reflects the following:

• That Salvatore Favata, acting as the sole relevant actor at Debtor National Consumer Mortgage, LLC ("NCM"), fraudulently transferred NCM's funds to Defendant Rio Properties, Inc., in the amount of $10,342,008.21, between September 4, 2003 and March 26, 2006, pursuant to 11 U.S.C. §§ 548 and 544, and Cal. Civ. Code § 3439; and

• Of the $10,342,008.21 in funds fraudulently transferred to Defendant Rio Properties, Inc. between September 4, 2003 and March 26, 2006, Rio Properties, Inc. received $8,862,008.21 in good faith and without knowledge that any of the initial transfers from NCM to Salvatore Favata were actually or constructively fraudulent, pursuant to 11 U.S.C. §§ 548 and 544, and Cal. Civ. Code § 3439; and

///

• Plaintiff John P. Brincko, as Trustee of Debtor NCM's estate, shall recover from Defendant Rio Properties, Inc. the sum of $1,480,000 less $7,429.45 in Court-ordered sanctions; and

• Plaintiff John P. Brincko, as Trustee of Debtor NCM's estate, shall recover prejudgment interest in an amount to be set forth in the proposed form of judgment reflecting the higher of (1) a rate of 7% per annum, simple interest, or (2) at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the adversary complaint, from April 2, 2008 through the date of judgment, which shall be June 6, 2014; and

• Plaintiff John P. Brincko, as Trustee of Debtor NCM's estate, shall recover post-judgment interest at the statutory rate set forth in 28 U.S.C. § 1961 from the date of the judgment, which shall be June 6, 2014, until the judgment is fully paid and satisfied.

IT IS FURTHER ORDERED that Plaintiff John P. Brincko, as Trustee of Debtor NCM's estate, is the prevailing party in this action, but any application for costs may request only fifteen percent of Plaintiff John P. Brincko's costs.


DATED:  May 8, 2014

PHILIP M. PRO
United States District Judge